## SOEHNER v. FAVORITE STOVE & RANGE CO. [1]

(Circuit Court of Appeals, Sixth Circuit. December 7, 1897.)

### No. 486.

1. PATENTS—COMBINATION CLAIMS—PRACTICABILITY.

Where the claims are somewhat obscure, and it is objected that the combination is not a practicable one, the court will apply the rule that the claims are to be construed in the light of the specifications; and if, looking at both, the court is able to understand the meaning of the patentee in the language of his claims, and as so understood the combination is practicable, it will give effect to them according to the apparent purpose.

2. SAME—ANTICIPATION.

The existence and prior public use of an article embodying the combination of a patent, in almost exactly the same form, will defeat the patent, whether the advantages of it were known to the manufacturers and users or not.

3. SAME—INVENTION—COOKING STOVES.

The use of curved or swelling side plates along the side grooves of a cooking stove being known, the employment of the same construction at the rear end of the side plates, alongside the vertical grooves, is merely an extended application of the same idea, or a duplication of the former construction to perform a like service, and is not patentable.

4. SAME.

The Boal reissue, No. 11,462, for improvements in cooking stoves, consisting in the use of inwardly curved side plates joined to the flue plates, construed, and held to be void, in view of the prior state of the art, for want of patentable invention.

5. DESIGN PATENTS—SCROLL WORK ON STOVES.

In view of the ancient and common use of scroll work for the ornamentation of exposed surfaces, one cannot now claim broadly, under a design patent, the use of scroll work in general upon the margins of the sides and other prominent features of a stove. To be patentable, there must be something peculiar in the formation of the scrolls themselves, or in their relative arrangement, so as to produce a distinct effect, affording a special utility beyond any ordinary work of the kind.

6. SAME.

The Boal patent, No. 23,780, for a design for stoves, construed, and held not infringed.

Appeal from the Circuit Court of the United States for the Southern District of Ohio.

[1] Rehearing denied February 8, 1898.

Nelson Davenport and Robert Ramsey, for appellant.

E. E. Wood and Edward Boyd, for appellee.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

SEVERENS, District Judge. This is a suit in equity upon a bill filed in the court below by the Favorite Stove & Range Company, setting up the ownership by complainant of two letters patent issued to Stanhope Boal, one of which is reissue No. 11,462, of date January 8, 1895, for an improvement in stoves; the other being design patent No. 23,780, for the ornamentation of stoves, and bearing date November 6, 1894,—both of which patents, it is alleged, were assigned to the complainant. The bill charges that the defendant (the appellant here) has infringed both of said patents, in the sale of a stove called in this record the "Western Stewart," and it prays for an injunction, and an accounting in respect of the profits and damages. The defendant answered, denying the validity of the patents, upon the ground that the inventions lacked patentability; alleging that they had been in prior public use, and that they were anticipated by the prior art; and also denying infringement; but as no question arises in respect to the pleadings, and the case has been contested on the merits, it is unnecessary to go into further detail of the pleadings. The case was brought to a hearing on the pleadings and proofs, and the court, being of opinion that both the patents sued on were valid, and were infringed by the defendant, decreed in favor of the complainant. The defendant has brought this decree here for review by appeal.

Reissued patent No. 11,462 relates to the construction of cook stoves having three flues at the rear and bottom of such stoves; that is to say, two flues extending down the back of the oven, and at the outer end of the flue space there, and thence along under the oven next the outside of the stove, until these side flues open into a central return flue, which passes back under the oven, and up the rear thereof, between the side flues above mentioned. Such stoves had long been in use, and the patent is for an improvement upon the old construction. The patentee states the object of his invention thus:

"The object of my invention is to provide a cooking stove with a curved or swelling form of side plates. to which the oven doors are hinged, so as to increase the capacity of the flues, and also to increase the capacity of the oven, and at the same time adding a beautiful appearance to the stove, without increasing the cost."

The essential feature of the construction devised by him consisted of an enlargement of the rear and bottom side flues, by swelling out that portion of the side plates of the stove which forms the side wall of the flues, in a circular form, turning inward towards the edges of the plates, and hanging the oven doors considerably back of the side openings of the oven, and upon the curve of the side plates towards the rear. It is claimed that thereby the area of the flues and of the oven is increased, and the appearance of the stove improved, without increased cost in the manufacture. The claims, as shown by the patent, are as follows:

"(1) The combination with a cook stove having the usual draft flues and oven, and provided with two plates forming a flue at the rear of the oven, of a curved side plate, M, joined to the aforesaid flue plates, and forming an extension of the rear flue, substantially as specified. (2) The combination with a cook stove having an oven, and draft flues extending about said oven, and down at the rear thereof at each side, of curved plates, M, forming extensions of the said rear flues, substantially as specified. (3) The combination of a cook stove having an oven, and draft flues extending about said oven, and downward at the rear thereof, and at each side, of the curved plates, M, forming extensions, U', at the top and bottom of the oven, substantially as specified. (4) The combination with a cook stove having an oven, and draft flues extending about said oven, of the curved side plates, M, R, forming extensions at the sides and rear thereof, substantially as specified."

Fig. 1. is a central vertical longitudinal section
Fig. 3. is a section on line X, X, Fig 1.
Fig. 4. is a section on line y, y, Fig. 1.

Fig. 1.

Fig. 3.

Fig. 4.

R is a prolongation of the side plate, M, at the rear end of the stove, curving inward, and resting upon the rear plate. Inasmuch as a cook stove "having the usual draft flues and oven," which is made one element of the combination in the first claim, is the same stove as is made the corresponding element of the second claim, the claims are in effect for the same thing. The claims in the patent were not prepared with technical precision, and are somewhat obscure. Objection is made to them by counsel for the appellant, that they do not describe a practicable combination. In terms, they describe a complete cook stove as one element of the combination, and the side plate, M, could not be put together with the stove already completed. But, on looking at the specifications, we see that the patentee did not mean, in his claims, to use as one part of his combination the whole cook stove, but the stove minus the outer plates, which were to be supplied by the other element of the combination. If, therefore, we apply the benignant rule of construction,—as we are required to do,—that the claims should be construed by the specifications, and that if, looking at both, the court is able to understand the meaning of the patentee in the language of his claims, and, as so understood, the combination is a practicable one, it will give effect to them according to the apparent purpose. Ryan v. Goodwin, 3 Sumn. 514, Fed. Cas. No. 12,186; Blanchard v. Sprague, 3 Sumn. 534, Fed. Cas. No. 1,518; Turrill v. Railroad, 1 Wall. 491; Klein v. Russell, 19 Wall. 433, 466; Haworth v. Hardcastle, Webst. Pat. Cas. 480; Blandy v. Griffith, 3 Fish. Pat. Cas. 609, Fed. Cas. No. 1,529; Roller-Mill Co. v. Coombs, 39 Fed. 25. These are a few of the great number of cases in which the foregoing rule has been approved and applied. Of course, if the language of a claim, in the light of the specifications, does not show that the patentee has described a practicable combination, there is an end of it, and the claim is nugatory. It is claimed for this patent that it provides more space for the flues and oven, without increasing the cost of the stove. Whether this is so with respect to the flues seems to be, upon the evidence, dubious. The reasons advanced for believing it are not very satisfactory. If the oven is enlarged, the curving in of the side plates at their edges must necessarily involve the use of more material in the side plates than if the plates were vertical throughout. But it is not necessary for us to decide how the fact is. With regard to the increase of the oven space by the proposed construction, it seems clear that, if the bottom plate is contracted to diminish the material, it must be at the expense of the flues. It is true that the bringing of the oven doors back upon the rear projection of the side plates might, from the size given to the doors, induce purchasers to believe that the oven is larger than it really is. But that would be a species of deception which could hardly be said to be an improvement in a useful art, which the patent laws are designed to encourage. In the complainant's stoves built under this patent, the oven door is shown to be swelled out in its central part, and in this way the oven space is widened. But the form of the oven door is not involved in the patent. The door constitutes no part of the combination. The transfer of a portion of the width of the oven plates

to, and casting it as an inward projection of, the side plates, does not lessen the material employed, or result in any advantage that we can see, or that is suggested by the patentee. The substance of his patent and of his invention, as before stated, consists in the curving of the side plates.

We come now to the consideration of the prior art in the construction of the flues. It is shown by the evidence in the record that as early as 1877, and for several years thereafter, Gordon G. Wolfe, of Troy, N. Y., made and sold a large number of stoves having a similar curvature and expansion of the side plate along the side of the flue extending under the bottom of the oven. This device of Wolfe, after some modifications, was patented to one Gobelle, of Cleveland. In this patent the back flue, it is said, was extended by curving the wall of the flues adjoining the sides. This construction of the Wolfe stove is testified to by the witness Keep, who was engaged in the stove business at Troy at the time; and he is corroborated by Wolfe himself, who was produced as a witness, and also by the witness Hagan, a mechanical expert and solicitor of patents, who examined one of Wolfe's stoves in 1879, while a suit was pending concerning the validity of a patent involved in its construction. Keep also testifies that at about the same time, as we understand him, one George Graves made a stove at Troy called the "Senora," which had the front plate of both bottom and rear flues curved and turned in at the edges. How extensively the Graves stove went into use does not appear. What the object of this peculiarity in the form of the side plates was, we are not informed; and we cannot say whether it was done to enlarge the flue, or to improve the looks of the stove. It is probable, however, that the latter was the main purpose, for it is not made to appear that the flues of the old construction were defective in their capacity. But it is not material. The existence and prior public use of side plates in stoves making up the same combination as that shown by the patent in suit, of an almost, if not exactly, similar formation, would defeat the patent, whether the advantages of it were known to the manufacturers and users of the older stove or not. Much stress is laid upon the advantage gained by the widening of the oven produced by giving the swelling form to the side plates. Undoubtedly the oven is widened, relatively to the bottom plate of the stove, by curving in the lower edge of the side plate, and so relatively to the top and back plates, by the like curving of the edges of the side plate where the plates meet. And this result was obvious to the most common observer of the earlier stoves. It is difficult to find invention in discovering so plain an inference as this. And so of the flues. If there had never been any previous construction of the kind, it would be hard to find any sufficient grounds on which to support this patent. No new function of the stove is developed. The results of operating it are the same. The parts remain in substance as before. The form of one of them is changed. The result of that is that the top, bottom, and rear plates can be made smaller. If the saving thereby made was worth the while, it involved no invention to draw in the edges of the side plates to accomplish it. If the swelling form was new, and the beauty of the stove was there-

by increased, it might give ground for a design patent, but that feature alone would not support a patent for the structure itself.   Moreover, it is within common knowledge—and therefore the court should take judicial notice of the fact—that, a good while before the invention claimed by Boal, box stoves were in general use, the side and back plates of which, as well as the door, were swelled out in their central parts, and turned inwards toward the edges.   This formation widened the stove in the same locality as that of the oven in the cook stove, and suggested all the advantages of form and appearance to be gained by such expansion of the center in a cook stove. But the use of the curved formation of the side plates along the side flue under the oven in the Wolfe stove is sufficiently proven.   The evidence that this formation was employed at the rear end of the side plates alongside the vertical flues is not so clear.   But, if we were to negative this, the case would still stand exposed to the rule stated in Smith v. Nichols, 21 Wall. 112, 119:

"A mere carrying forward, or new or more extended application, of the original thought; a change only in the form, proportions, or degree; the substitution of equivalents, doing substantially the same thing in the same way by substantially the same means, with better results,—is not such invention as will sustain a patent."

This rule has been since so many times restated and applied that it has become familiar doctrine.   Fox v. Perkins, 3 C. C. A. 32, 52 Fed. 205.   It has been most frequently quoted in cases of the simple development of the original thing.   But the transferring by Mr. Boal of the same construction from the lower edge of the side plates along the bottom flues to the rear edge along the rear flues, if in fact that was new with him, would furnish an apt illustration of a new application of the original thought, such as is spoken of in the case just quoted.   Indeed, it would come near to a mere duplication of the former construction to perform the like service in a connecting flue, such as was found in L. Schreiber & Sons Co. v. Grimm, 19 C. C. A. 67, 72 Fed. 671, and Clark v. Deere & Mansur Co., 25 C. C. A. 619, 80 Fed. 534.   The curving of the side plates at the edges may not be identically the same in the Wolfe stove and that of the stoves manufactured by the complainant under the Boal patent, but a mere change of form, not substantial, and not producing results distinct in their nature, is not invention.   But Boal does not define the degree of curvature, and any appreciable degree would fulfill the requirements of his patent.   Having this fact in view, and having no doubt that the Wolfe stoves had this formation with respect to the sides of the bottom flues, at least, and that those stoves had been disseminated widely and in public use many years before Boal's alleged invention, we think there was error in sustaining his patent.

There is much evidence in the record in regard to the Garland stoves, which the appellee produces, as anticipating the patent in suit.   It was proven by the appellee, clearly enough, that the Garland stove, which also possesses the same circular formation near the edges of the side plates, was manufactured and on sale prior to the date of Boal's application for his original patent, and that Boal must have known this.   But, after this proof was in, the complain-

ant offered evidence to show that Boal's invention was prior to his application, and antedated the production of the Garland stove by a short period of time.    It may be true.    We do not decide that question.    The circumstances are such that we should feel impelled to look into it more critically if we were not satisfied that Boal had been anticipated in another quarter.    It seems altogether likely that both the Boal and Garland stoves are simply the adoption and expansion of old constructions.

Patent No. 23,780 relates to a design employed in the form and ornamentation of the complainant's stove.    The form is stated to embody round corners on the front frame plate, the edges of which are flush with the edges of the curved door.    The ornamentation consists of scroll work on the outside borders of the larger side members of the stove, and upon the body of the smaller members which lack room for the advantageous representation of such work upon their margins.    Another feature of his design consists of an ornamental central portion of the oven door, in imitation of an alligator skin, inclosed in which is the nameplate or panel of the door.    The specifications and drawings describe the formation and ornamentation of several parts of the stove, and thereto are appended eight claims, the first of which is for the design of the whole stove.    The rest are for the distinct parts referred to in the specifications.    The first claim is the only one involved in the controversy.    It is not urged that any of the others are infringed.    The art of ornamentation with scroll work is ancient.    The classical sculpture and architecture of the old civilization employed it in various styles, and in a variety of their productions; and its use has been continued and enlarged, not only in the old departments of the arts, but in new and familiar productions in domestic life.    Not only the columns, capitals, walls, and ceilings of buildings, and tapestries, old and new, illustrate it, but the counterpanes of beds, the covers of tables, and the borders of the pages and covers of books and magazines are some of many other things seen in almost universal use. Again, it is well known, and matter of common observation, that when the object to be decorated is large enough, and exposes its whole surface, it is regarded as in good taste and effective to dispose such decoration upon its margins, though it would not be so practicable upon smaller surfaces.    All these things being so, the field for invention in decorating the plates and legs of stoves with scroll work, if it was open at all, must necessarily be limited.    It could not consist, broadly, in displaying scroll work in general upon the margins of the sides and other prominent features of the stove. There must be something peculiar in the formation of the scrolls themselves, or in their relative arrangement, so as to produce a distinct effect, affording a special utility beyond any ordinary work of the kind.    It was not possible for Boal to establish a monopoly in the ornamentation of stoves with scroll work displayed in a way which was not distinguishable to the general observation from ordinary work of the kind exposed in appropriate places upon such an article.    That was a privilege, an advantage, accruing to everybody from the progress of art.    It is not necessary to decide whether his

design meets the requirements that were imposed upon him when he proposed to make a design of this sort patentable; for, if that be admitted, it is plainly obvious that the defendant's stove does not infringe his patent, when limited to the specific characteristics of his scrolls, or the peculiar arrangement of them. The complainant does not, as we understand, contend that there is a close similitude between the design of his stove and that of the defendant, when considered in detail. It would be vain to contend for that; for while it must be admitted (and this is the contention most pressed by the complainant) that to the casual observer, or to one who regards their general appearance only, there is a sameness of appearance, yet it is only the sameness which results from the use by the defendant of the resources which were of right open to each,—that is, in this case, the privilege of using an old kind of ornament, in its common style of application, to the improvement of the appearance of his stoves. Another quite noticeable difference in the design of the complainant's stove consists in the imitation of the skin of an alligator upon the oven door, in the space surrounding the panel for the nameplate, which is not found in the defendant's. But it is not necessary to dwell upon this and other differences. The detail of the ornamentation varies in most particulars, and the arrangement, in their relation to each other, of the details, varies also. To declare the defendant's stove an infringement would be to concede to the Boal patent pretensions broad enough to cover the whole field of ornamenting stoves with scroll work applied according to the generally approved style and methods of the art. As this concession must be denied, it follows that the alleged infringement must also be denied. The decree of the court below will be reversed, and the cause remanded, with directions to the court below to dismiss the bill.