CANDA et al. v. MICHIGAN MALLEABLE IRON CO.

(Circuit Court of Appeals, Sixth Circuit. August 14, 1903.)

No. 1,182.

1. PATENTS—ASSIGNMENT.
    An assignment by a sole patentee of all his right, title, and interest in the patent, "being an entire interest therein," is sufficient to vest the title in the assignees.

2. SAME—CONTRIBUTORY INFRINGEMENT—MAKING PART OF INFRINGING STRUCTURE.
    One who manufactures an essential part of an infringing structure, which is adapted to no other use, and sells it to another to complete the structure, is a contributory to and liable for the infringement.

3. SAME—VALIDITY AND CONSTRUCTION OF CLAIMS—REFERENCE TO SPECIFICATION.
    A claim of a patent is not void because the element therein claimed does not by itself constitute a complete operative structure, where those familiar with the art would understand its use, and especially where the claim refers to the specification, which in such case may be looked to for the purpose of ascertaining the connection in which the device is used, and the other parts necessary to complete the structure and render it operative, although such parts cannot be imported into the claim.

4. SAME—ANTICIPATION.
    A patent otherwise valid is not void for anticipation because a prior patent covers a device which might be so constructed as to be capable of the same use as that of the later patent, where the prior patent gives no sign that such use was contemplated, and no specific directions for such construction.

---

¶ 2. Contributory infringement of patents, see note to Edison Electric Light Co. v. Peninsular Light, Power & Heat Co., 43 C. C. A. 485.

¶ 4. See Patents, vol. 38, Cent. Dig. §§ 66, 79.

5. SAME—INFRINGEMENT—DRAWBAR ATTACHMENTS.

The Canda patent, No. 460,426, for a drawbar attachment for railroad cars, claim 1, covering a spring casing for attachment to the draft timbers, construed, and *held* not anticipated, valid, and infringed by the device of the Thornbrough patent, No. 588,722.

Appeal from the Circuit Court of the United States for the Eastern District of Michigan.

This is an appeal from a decree dismissing the bill in a suit brought by the appellants complaining of the infringement of claims 1, 2, and 7 of letters patent No. 460,426, granted September 29, 1891, to Ferdinand E. Canda, the assignor of the complainants, and praying for an injunction, and for profits and damages. The patent was granted for improvements in the construction of drawbar attachments for railroad cars. The defendant answered, denying the title of the complainants to the grant contained in the patent, and denying also that the patentee was the first and real inventor of the supposed improvements, or that the patent was valid, or was of any utility or value, and further denying infringement thereof. A large number of patents of prior date were specified as anticipations of the alleged invention described in the patent in suit. A replication was filed and proofs taken. At the hearing the Circuit Court held all the above-mentioned claims invalid upon the ground that the alleged invention was anticipated by former inventions for which patents had been granted, several of which are particularly discussed in the opinion of the Circuit Court which is sent up in the transcript. In accordance with its said opinion, the bill was dismissed. 123 Fed. 95.

Parker & Burton (James C. Chapin, of counsel), for appellants.
W. H. Singleton, for appellee.

Before LURTON and SEVERENS, Circuit Judges, and WANTY, District Judge.

SEVERENS, Circuit Judge, having made the foregoing statement, delivered the opinion of the court.

The invention for which the Canda patent was granted relates to the attachments at the inner end of the drawbar in railroad cars, whereby the connection is made between the drawbar and the draft timbers of the car. It is commonly known that provision is made by such attachments for easing the shock in starting and stopping railroad cars, and that this is done by allowing a sliding motion of the drawbar between the draft timbers running lengthwise of the car and providing a spring or springs at or near the inner end of the drawbar, and so associated with it as to resist the inward thrust of the drawbar as well as the lengthwise pull in forward draft, one end of the springs being secured to or in contact with the drawbar or some of its attachments—as, for instance, a follower fixed thereon—and the other to the draft timbers or something thereto attached. A casing is necessary to contain and hold in place such springs and the tail of the drawbar sliding between them and the followers, and sometimes perhaps other parts. The casing is necessary not only as a housing for the apparatus, but also to keep the parts in place, and to serve as the medium by which the force applied to the drawbar is communicated to the car. It is particularly this casing which is the subject of the Canda patent. The inventor states that his object is to construct a casing of such form as to secure the best anchorage in the draft timbers, and also to admit easy access to the parts within it for the pur-

pose of removing them, and this without taking down the casing itself, which is rigidly attached to the draft timbers, and cannot, without much labor and loss of time, be removed. Accordingly he makes his casing with rigid sides and top, and adapted to be let into the inner sides of the draft timbers, and the casing firmly bolted thereto. To provide easy access to the parts contained, he leaves the bottom of the casing open, and adapted to receive a bottom plate; the expectation being—though that is not made an element of his first claim—that the bottom will be supplied by the builder.

Fig. 1.

Fig. 1 of the drawings here produced illustrates the casing and the bottom plate.

The claims involved in the present controversy are as follows:

"(1) In a drawbar attachment for railroad cars, a spring casing formed integrally with a single casting having a closed top and an open bottom and constructed for attachment to the longitudinal draft timbers, substantially as herein shown and described.

"(2) In a drawbar attachment for railroad cars, the combination, with the draft timbers, of a spring casing permanently attached to the timbers, and provided with a removable bottom plate extending the entire length of the casing, and locked to the sides of the casing, substantially as specified."

"(7) In a drawbar attachment for railroad cars, a spring casing adapted to be permanently attached to the draft timbers, and provided with one or more removable plates that lock with the sides of the casing, substantially as and for the purposes herein shown and described."

1. The first ground taken by the defendant against the maintenance of the suit is that the assignment offered in evidence is not, in legal effect, a transfer of the entire interest in the patent, but only of the interest of the assignor. The language of the assignment is as follows:

"I, the undersigned, Ferdinand E. Canda, of the borough of Manhattan, in the city of New York, for and in consideration of one dollar and other good and valuable considerations, the receipt whereof is hereby acknowledged, have sold, assigned, and transferred, and by these presents do sell, assign, and transfer, unto Canda Brothers, a firm composed of Charles J. Canda and

myself, all my rights, title, and interest in and to six certain letters patent issued to me by the United States of America, and numbered and dated as follows, viz.: No. 460,426, dated September 29, 1891 [and five others enumerated], being an entire interest therein, for the sole use of said firm of Canda Brothers and its legal representatives, successors, and assigns."

The following statement of his point is taken from the brief of counsel for the appellee:

"If 'my' interest was 'the' entire, and not simply 'an' entire interest, then it was incumbent upon appellants to prove this, which, if true, might be done by oral testimony."

The assignor was sole patentee. It will be noticed that the assignor is one of the assignees. But no criticism is made upon that circumstance. We think the objection stated is hypercritical, and that the intent and effect of the assignment was to transfer a one-half interest to the other partner, nothing appearing to show that the partners stood upon unequal terms.

2. It is contended for the appellee that the evidence does not show that the appellee participated in the alleged infringement. In support of this contention it is urged that the proof shows that the appellee made only the casing for the springs and other contents without any bottom, and had never associated it with the other parts with which it must be connected in order to make it of any use. This objection can have no application to the first claim, for that is on the casing without a bottom. Nor has it proper application to the other claims; for, if the defendant constructed and sold an essential part of the infringing structure for the purpose of enabling another person to infringe the patent by adding something else to make the entire infringing article, it made itself a contributary to, and liable for, the infringement. And we have no doubt that this was the fact. The casings without bottoms which the defendant made and sold were good for nothing else. Their form and characteristics plainly indicated their purpose. The case is not like one where the thing made is also adapted to use in other ways. It would be wholly inadmissible to shut out the manufacture or sale of things adapted to a proper and lawful use. That would interfere with the rights and privileges of the public. But it has been held that, even in that case if it were proven that the thing, although adapted to other uses, was nevertheless intended by the seller to go into, and contribute to, the infringement by another, the furnisher could not escape the consequences of the infringement. Heaton Peninsular Button Fastener Co. v. Eureka Specialty Co., 77 Fed. 288, 25 C. C. A. 267, 35 L. R. A. 728; Edison Electric Light Co. v. Peninsular Light, etc., Co. (C. C.) 95 Fed. 669, 673, affirmed in 101 Fed. 831, 43 C. C. A. 479. The test in all cases is whether the facts show an actual participation in the wrongful act complained of. We cannot resist the impression that upon the application of this test the defendant must stand upon the same footing with the party who completes the infringement by adding the other element necessary to the completion of the former.

3. The counsel for appellee makes the point that claim 1 does not describe an operative structure, and he contends that, because a casing without a bottom would serve no purpose, and could be put to no use,

this claim must fail. But it is erroneous to suppose that because the element, or the combination of elements, in a claim, do not of themselves constitute an operative thing, or one capable of any use, the claim is, therefore, void. No doubt that would be the result if no useful place for it was known to those familiar with the art, and the inventor himself disclosed no relation in which it would be useful. All that is plain enough. But a man may invent a single element, or an improvement in some element, in a machine or some other product, or he may invent an entire machine or product, and he may claim according to his invention, and explain its adaptations, if they are not likely to be understood. Nobody familiar with the subject could have any doubt from reading this claim, without more, as to the particular thing which the patentee claimed as new, or in what relation to other parts, and what other parts, it was designed to be used. Aided by the specification, all doubt is removed as to what the more general statements of the claim mean. It is well settled that for such purpose, and especially when the claim refers to the specification for further description, it is proper to resort to the specification, if explanation is necessary. Soehner v. Favorite Stove, etc. Co., 84 Fed. 182, 28 C. C. A. 317; Stilwell-Bierce & Smith-Vaile Co. v. Eufaula Cotton Oil Co., 117 Fed. 410, 54 C. C. A. 584; Klein v. Russell, 19 Wall. 433, 466, 22 L. Ed. 116; Hailes v. Van Wormer, 20 Wall. 353, 22 L. Ed. 241; Lamb Knit Goods Co. v. Lamb Glove & Mitten Co. (C. C. A.) 120 Fed. 267, 269. The claim cannot be broadened or be made to include things not therein included, but to know what is included we may resort to the specification for the purpose of interpreting the claim. And this is really nothing else than applying the general rule applicable to all written instruments. This is entirely consistent with the rules stated by Mr. Justice Brown in McCarty v. Lehigh Val. Ry. Co., 160 U. S. 110, 116, 16 Sup. Ct. 240, 40 L. Ed. 358, which is cited to sustain the objection to referring to the specification to help out the claim. The learned justice says:

"There is no suggestion in either of these claims that the ends of the bolster rest upon springs in the side trusses, although they are so described in the specification and exhibited in the drawings. It is suggested, however, that this feature may be read into the claims for the purpose of sustaining the patent. While this may be done with a view of showing the connection in which a device is used, and proving that it is an operative device, we know of no principle of law which would authorize us to read into a claim an element which is not present for the purpose of making out a case of novelty or infringement."

In accordance with this statement we may refer to the specification "with a view of showing the connection in which the device is used, and proving that it is an operative device," and we learn that the article described is intended to be used with a bottom plate, and that the patentee shows a suitable bottom plate. Thus everything is supplied to the hand of the workman for making the thing invented operative. The somewhat figurative, but now familiar, expression of Mr. Justice Bradley in White v. Dunbar, 119 U. S. 47, 7 Sup. Ct. 72, 30 L. Ed. 303, is also cited:

"Some persons seem to suppose that a claim in a patent is like a nose of wax, which may be turned and twisted in any direction, by merely referring

to the specification, so as to make it include something more than, or something different from, what its words express."

But when the language used and its context is carefully examined, it means nothing else than that we may not look to the specification for the purpose of calling in elements not at all included in the claim, but may do so for the purpose of explaining it. Stilwell-Bierce & Smith-Vaile Co. v. Eufaula Cotton Oil Co. et al., 54 C. C. A. 584, 117 Fed. 410. If, when thus explained, the specification answers the calls of the claim, there is no difficulty. But one may not read into a claim an element not contained in it when its meaning is once settled by construction. So this first claim cannot include the bottom plate, though it may refer to it either in terms, or by the suggestions which it imparts to one familiar with the subject. And, since the open bottom would suggest the necessity of a bottom plate, the skill of the mechanic will supply it in adapting the invention to a useful purpose. Deering v. Winona Harvester Works, 155 U. S. 286, 302, 15 Sup. Ct. 118, 39 L. Ed. 153; Goshen Sweeper Co. v. Bissell Carpet Sweeper Co., 19 C. C. A. 13, 92 Fed. 67, 73, 74; Roberts v. Nail Co. (C. C.) 53 Fed. 920; Campbell Printing Press Co. v. Duplex Printing Press Co. (C. C.) 86 Fed. 315, 321.

4. There were many previous patented constructions of apparatus designed for the same general purpose as that of the Canda patent. It is not necessary to consider all of them, but we will examine such of them as seem most pertinent, and most relied upon by the defendant as anticipations of the first claim for invention for which Canda's patent was granted. Substantially, as shown and described, this claim is for a spring casing having its sides and top cast in a single piece adapted for attachment to the draft timbers, and having an open bottom, adapted to the attachment of a bottom plate, of the peculiar construction indicated. A patent (No. 104,704) was granted in 1870 to Carll and Shute for improvements in car couplings. This patent is concerned with the coupling apparatus, the drawbar, and springs which affect the movements of the bar. A bracket, which in some respects resembles the modern casing, is shown. It consists of the sides and top in one piece, the sides being intended for attachment to draft timbers, and has an open bottom. The springs shown are attached to the inside of the bracket, and extend through it at the fore end. There is no suggestion of its having an open bottom for any purpose, and no claim is made which involves it as an element, and no specifications are given for adapting it to the particular use contemplated by the patent in suit, and the contents could not be taken out without more or less dismantling the structure. A patent to Ustick in 1875, No. 164,113, was also for couplings. The only reference to a casing is in the mention of it as a box, which serves as a guide for the slide springs which connect the fore end of the drawbar and its tail part, and as containing the resisting spring, and no further description is given; nor is it mentioned in the claims; nor is there any requirement in the specification for adapting its construction to the purposes of the patent in suit.

The next patent to which our attention is invited by the brief and argument of counsel is one granted to Starr May 15, 1888 (No. 382,-

840), which relates to draw gear for railway cars. It consisted of improvements in the means provided for obtaining a secure attachment between the cage and the draft timbers of the car. No reference is made either in the description of the invention or in the claims to the bottom of the cage, or to so constructing it as that such a use as Canda proposed could be made of it. We do not by this mean that, if Starr had devised, and in his patent given directions for the construction of, a cage which could be used for the purposes of the patent in suit, and was so similar to it as to be an equivalent, such a device would not have been an anticipation. We have on many occasions said that in such case, if the patent gave reason to suppose that the inventor may probably have contemplated that his device was capable of other uses, and made adequate provision therefor, his invention should be regarded as covering them, whether he mentioned them or not, or whether he contemplated any other particular use or not. For example, in Goshen Sweeper v. Bissell Carpet Sweeper Co., supra, and Stilwell-Bierce & Smith-Vaile Co. v. Eufaula Cotton Oil Co., supra. But if the patent gives no sign of such contemplated use, and makes no provision adapting it to other uses, the patentee cannot be said to have invented that for which he has given no specific directions for construction. And such is the necessary deduction from the statutory requirement that the patentee shall give such clear, full, and concise instructions as shall enable any one skilled in the art to make, construct, conform, and use the thing invented. Rev. St. § 4888 [U. S. Comp. St. 1901, p. 3383]. Nor can we think that the existence in the Patent Office of something which might merely supply a hint, but was not specifically described or claimed as intended to be covered by a patent, ought to be held as an anticipation of an otherwise valid invention. Inventors are not precluded by the embryonic and shapeless ideas found in former patents, any more than they are by such undeveloped matter existing elsewhere.

Another patent especially referred to is that granted to Post July 2, 1889 (No. 406,305), also for improvements in car coupling. The invention, as stated by the patentee, was of devices "to improve and simplify the means of attaching such coupling to the cars; a further object being to so construct the devices that the cars will be automatically uncoupled in the event of the derailment of one of the cars." The patent does not make any reference to anything else than the coupling heads, the drawbars, and certain devices contrived to improve their operation in emergencies. There is nothing in it relevant to the case before us.

And, lastly, there is a patent to Hardy, dated September 8, 1891 (No. 459,041), upon an application filed April 16, 1891, also for improvements in car couplings. The application for the patent in suit was filed May 4, 1891, and the patent issued September 29, 1891. Thus it will be seen that Hardy's application was earlier than Canda's, and his patent was issued earlier than the latter. Counsel for appellants contends that, having regard to the form of pleading in the answer, and certain evidence offered to show that Canda's invention antedated that of Hardy, the Hardy patent must be treated as

subordinate to that of Canda, and not an anticipation of it. We have some doubt whether either of the grounds taken for giving priority to the Canda patent are maintainable. But we do not decide that question, and so do not go into the particulars of it; because we think that the Hardy patent stands on the same grounds, as regards its effect as anticipation, as some of those already considered. It was not constructed with a view to the special purpose of the patent in suit. It is true that it might happen that a casing would be made under the Hardy patent which would be adapted to the use contemplated by Canda. But, if so, it would be merely accidental. It would not result from any preconception, nor from anything specifically directed by the patentee for organizing his invention. The patent does not show a casing having its sides and top case in one piece, and this feature is one of the dominant characteristics of this first claim of the Canda patent. While it is true that there is no invention in making into one whole that which was before in the same form, but in detachable parts, when there is no further consequence, yet it is also true that, if such change produces a more useful result, there may be a quality of invention in making it. And that is what is claimed to be the fact by the patentee in the patent in suit. None of the prior patents show the peculiar adaption of the Canda patent at the bottom of the casing for connection with a bottom plate having recesses to receive the lower edges of the sides of the casing, thereby contributing to its strength.

We have examined the other patents shown in the record sufficiently to satisfy ourselves that there is nothing else which comes nearer to the claim in the Canda patent we are now considering than those we have enumerated. It must be admitted that, if there were no other considerations, some of the previous patents might raise grave doubt in respect to the novelty of this invention. But in aid of it stand several facts which are always persuasive in such a case. There is the presumption arising from the granting of the patent, which, in this case, was issued, as the proceedings in the Patent Office show, after full and critical examination, and this after rejections and references to previous patents of a character very similar to those we have in the present record—indeed, some of them are the same. The invention has gone into extensive use. It was stated at the hearing that it is used on about 20 railroads in this country. The defendant says its casings are in use on about 60 railroads, and, since infringement is hardly denied, perhaps some further credit to the Canda patent ought justly to be taken from the public approbation of the defendant's structure. The defendants' casing is manufactured under a patent issued to Thornbrough (No. 588,722), of date August 24, 1897. A leading feature of this patent is this very peculiarity of the Canda patent of an open bottom adapted to receive a bottom plate. Thus the patentee, in stating his invention, says:

"To make it possible, in case of a breakage of the drawbar or spring, to easily and readily replace the same by simply removing the carrier iron and one bolt which holds up the spider in engagement with the draft-spring housing, and thereby to take out the broken part, and to replace it without further disturbance of the other parts of the apparatus, which is an impossibility with the most modern attachments or draft apparatus now in use."

He calls the bottom plate of his casing a "spider," although in another place he states that "when the spider is fastened in position, the follower plates play back and forth thereupon, and are supported thereby." Further on in his specification, he says:

"When it became necessary or desirable to remove the follower plates, the spring, the yoke, or other parts from the housing, it may obviously be readily accomplished by simply removing the forward bolt, $H^1$, allowing the spider to swing down, the bolt, $H^2$, acting as a hinge bolt, allowing the spider to be dropped down out of the way, and the ready removal of said parts, so that in case of the breakage of the drawbar spring or other parts they may be easily removed and replaced, requiring only the removal of the carrier iron, J, and the one bolt which holds the forward end of the spider in engagement with the housing."

And in each of his six claims he makes this casing a leading factor. We make this reference here to the defendant's structure for the purpose of showing the credit due to the Canda patent from the use which the defendant has been able to make of it. For these reasons we are constrained to think the validity of the first claim should be recognized. We have already said enough to show the infringement of this claim; and it is in substance admitted, if the claim is to be held valid.

5. And what we have said would also probably sustain the second claim, which adds a bottom plate having the corresponding features of the lower edges of the casting adapting it for attachment therewith. But we refrain from discussing it, for the reason that we do not find in the record evidence to show that the defendant's "spider" has those peculiar features, though there is a significant hint of the "interlocking" of those parts in the specification of the Thornbrough patent wherein he says, in speaking of the means of fastening the bottom plate to the casing, "These bolts may engage the spider with the sides of the housing in any suitable manner; as, for example, by providing the housing with ears, Q, and the spider with ears, Q, through which the bolts may pass." As this is not the only one way in which the parts may be attached, it was incumbent on the plaintiff to show that the defendant used casings and bottom plates of that fashion; otherwise infringement is not proved.

The seventh claim was not insisted upon at the hearing, and we therefore do not consider it. The decree is therefore reversed as to the first claim, and affirmed as to the seventh. As to the second claim, the decree is also affirmed, but upon the ground solely that infringement is not proven.