BROWN HOISTING & CONVEYING MACH. CO. v. KING BRIDGE CO.

(Circuit Court of Appeals, Sixth Circuit. February 12, 1901.)

No. 825.

PATENTS—PATENTABLE INVENTION—HOISTING AND CONVEYING MACHINES.

The Brown patent, No. 300,690, for an improvement in hoisting and conveying machines, used chiefly in unloading heavy cargoes, such as coal and ore, from vessels, and conveying the same to a distance,—the improvement described in the first three claims consisting in providing a jointed connection between the truss which carries the track of the conveyor and the piers upon which it is supported at or near either end, so as to permit the first end of the truss and the pier supporting it to be moved laterally without straining the parts or moving the second pier,— is void for anticipation and lack of patentable invention. The idea of making articulate connections between the truss and piers, broadly claimed as new in the patent, was disclosed in prior patents; and the specific devices described in the claims for making such connections were

old and well known, and such as would readily suggest themselves to a skilled mechanic as appropriate to accomplish the object desired.

**Appeal from the Circuit Court of the United States for the Northern District of Ohio.**

This is a suit in equity upon a bill filed by the appellant, the Brown Hoisting & Conveying Machine Company, complaining of the infringement by the King Bridge Company, the appellee, of rights secured by letters patent No. 300,690, issued by the United States June 17, 1884, to Alexander E. Brown, the assignor of complainant, for improvements in hoisting and conveying machines. The bill is in the usual form. The answer denies that there was any novelty in the supposed invention, or that it exhibits patentable invention. It further denies that Brown was the first inventor of the alleged improvements, and sets forth a list of 30 or more French and American patents which it is averred embodied the supposed invention of Brown, and also alleges that the said invention was in public use at Cleveland, Ohio, by the Cleveland Rolling-Mill Company, in 1881, at a date more than two years prior to Brown's application. The defendant also denies infringement. A replication to the answer having been filed, proofs were taken by both parties, consisting mainly of the patent in suit, the assignment thereof, and of prior patents for similar machines, and the prior use by the Cleveland Rolling-Mill Company, set up in the answer, with evidence by experts explaining and illustrating the patent in suit, and the prior patents and machines which were supposed to be relevant to the issues in the case. At the hearing on pleadings and proofs the bill was dismissed. The complainant brings the case here by appeal.

R. S. Taylor, for appellant.

Thos. W. Bakewell and S. H. Tolles, for appellee.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

SEVERENS, Circuit Judge, having stated the outline of the case as above, delivered the opinion of the court.

This case was decided by Judge TAFT shortly before his resignation, and in consequence of the pressure of other duties no written opinion was filed by him. We have nothing in the record, therefore, to inform us of the ground of his decision. But we w : advised by counsel at the hearing that it was understood to be that the supposed invention was not new, having been anticipated. It will be convenient to take up this question first. The invention professes to be of improvements in hoisting and conveying apparatus. The machine, so called, is of large dimensions and is of a kind used principally for the purpose of lifting heavy cargoes, such as coal and ore, out of ships and barges when lying at the wharf, and conveying them back from the water side to a convenient place for depositing; but it is adapted to any like use in taking up heavy material and conveying it from one place to another. That part of the structure to which the invention relates, and with which we have to deal, consists almost entirely of the connections between the hoisting and the conveying apparatus. The principal features of such machines are a truss or bridge from 100 to 300 feet in length, supported by two piers, one at or near each end, and having tracks built inside the truss whereon the wheels of the conveyor move in taking the load from the hoist to the place of discharge and in returning. The front pier stands near the edge of the wharf. The other is towards the rear end of the truss, which latter stands nearly perpendicularly to the wharf

line. The front end of the truss carries a projection wherein is provided means for lifting the matter to be moved up to the track of the conveyor, from whence it is taken to the place of delivery as above stated. Usually one of the piers is supported by a fourwheeled truck, the wheels of which rest on two parallel tracks, which are also parallel with the wharf line. The other pier is, in the more common use of such structures, in the form of a triangle, supported by two wheels only, and these rest on a single track, which is parallel to those under the other pier; the object being to provide for moving the machine by simultaneously, or nearly so, moving its two ends in a direction parallel to the edge of the wharf. Figs. 1 and 2, with the description thereof by the applicant given in the specifications, and the details above enumerated, show with sufficient distinctness for the present purpose the nature of the improvements patented:

FIG. 1.

FIG. 2.

"In the drawings, Fig. 1 is a side elevation of a machine made according to my invention. Fig. 2 is a top view of the same. A is the outer, and B the inner, one of the two piers, on top of which are supported the ends of the truss or bridge, C, of the tramway (see Figs. 1 and 2), which, as usual, is supplemented with an apron at D, adapted to extend out over boats to be unloaded at the dock, E. The carriage of the machine and its dumping-bucket, e, are shown on a small scale at f of Figs. 1 and 2. The inner or rear pier, B, is composed, as shown, of a suitable framework, of either iron or wood (in the instance shown, of wood), of sufficient base area to properly rest upon the usual track wheels that run on the rails a, b, and afford a steady support to the inner end of the truss or bridge, C, which, as shown, rests at its rear end on top of the uppermost cross bar or beam of said pier, and is there pivoted (see g, Fig. 2), so that its forward end may vibrate horizontally about such point of pivotal connection to pier, B, in a manner and for purposes to be presently explained. The forward end of bridge, C, is suspended from a sort of ball and socket bearing at the top of the outer pier, A, which, as seen, is composed of an A-frame in such a manner that said bridge or truss, C, at

its forward end, and the upper end of the said outer pier, are capable of a sort of universal joint movement relatively."

During the 25 years preceding Brown's application for a patent several similar machines had been patented in France and in the United States,—most of them in France, however, in which country the invention of them seems to have been stimulated by the building of the Suez Canal, where such machines were used in connection with dredges for the purpose of hoisting and conveying the earth from the channel to a place of deposit beyond the bank of the canal. Many such patents are exhibited in the proofs. We shall not take space to go through them all. It will be sufficient for the purpose of showing the progress which had been made in such constructions as Brown took in hand when he made his supposed improvement to refer to two or three of them. In 1859 a French patent was issued to Cave and Claparede for a system of apparatus designed for use in digging canals, and in transporting mechanically the earth to the land. Another patent was also issued in that country to the same parties, and in the same year, for (among other things) "transferring loads or earth." These machines were primarily intended for use in making canals, but the inventors say in their résumé that they were not only designed for that use, but, further, for the transportation and unloading "of all loads whatever that it is necessary to unload upon the banks of these rivers and canals, and to transport to certain distances from these banks." Another French patent was one to Gabert and Buette in 1881. This patent, so far as the truss was concerned, was very much like the patents just referred to. It rested upon universal joints,—one on the pier on land, the other on the platform of the vessel,—so that the latter could go forward or backward, or to the right or left; the truss, by means of the joints in its rests, accommodating itself to the movements of the vessel. The trusses in these machines were long structures extending from the vessel from which the load was to be taken beyond the bank to the place of the desired deposit. One end rested upon pulleys turning in a platform (a turntable) pivoted on the vessel. The other end rested upon a like construction oscillating vertically and horizontally, supported by a pier standing on the land. Thus, both ends of the truss rested upon supports provided with a universal joint. It is proper to observe in this connection that the drawings of these French patents show the pier on the land to be located at some distance from that end of the truss; the object being to cast the larger portion of the weight of the truss upon that rest, and thereby, as some of the patents state, give greater strength to the truss in proportion to its material and length. And in the complainant's exhibits, showing their hoisting machines at work upon the docks at Cleveland, we see that the rear piers are advanced from the rear ends of the trusses in the same way as in these French patents. We do not suppose it would be contended that this variation in the location of the pier would take the machine out of the patent so long as the front pier continues to perform its office as a rest for that end of the truss, although its burden might be very considerably diminished. In the United States, among other patents to which our attention has been

called, was one issued to Frank Murgatroyd, of Cleveland, May 8, 1883, for "mechanism for hoisting and transmitting freight, coal, ore," etc. This patent contemplated substantially the construction of Brown's patent, except that it did not embody joints at the connections between the piers and the truss. There was the same triangular form to one of the piers, and the same provision of tracks, wheels, and trucks for moving the machine over the dock in a direction parallel to the front. For some years previous to Brown's application the Cleveland Rolling-Mill Company had been making extensive use of unpatented machines somewhat similar to Murgatroyd's in unloading ore from vessels lying in front of their dock, and depositing it in localities for storage further back. These machines had also the same or similar provision for moving them along the dock, but there was no articulating or joint connection between the truss and the piers. The connection, however, was made by using flexible sheets of iron or steel in construction in such a way as to admit of moving the pier at one end of the truss a limited distance along its track, the other end remaining stationary, without injuriously straining the material of the truss and piers. The effect of so moving the piers as to carry the truss out of a perpendicular to the tracks under the piers would, of course, involve the drawing over of the top of the pier standing on the single track, as the track would form a tangent to the arc described by that end of the truss when revolved about the other and more stable pier. This, too, as well as the lateral movement, brought some strain upon the truss and piers, but their flexibility was nearly adequate to the need in the practical use of the machine; not quite, however, and the moving of the machine was not quite so easy as when the connections between the truss and piers articulate freely. And we are satisfied that some injury from straining resulted from the more rigid connection, though such injury seems to have been slight. Thus Brown had before him, when he took up the subject of his invention, hoisting and conveying apparatus which had been patented and improved abroad for many years, and which involved the use of a truss, two piers or supports to which it was articulately connected, and trucks and tracks for moving the more stable support along the bank over which the conveying was to be done.

We pass now from these illustrations of the existing art to the invention claimed in the Brown patent. The substance of it consisted in interposing a joint between the truss and the tops of the piers, respectively. A pivot was fixed upon the upper cross-bar of the rear pier, and an opening provided for it in a member of the truss. Upon the upper point of the triangular support at the front end of the truss was constructed a rounded surface upon which a saddle concave on the under side was placed, and upon the saddle the truss was suspended by a strap hanging downward and outward to the upper side members of the frame of the truss; the connection thus formed being similar to the familiar ball and socket joint. This latter connection served the purpose of permitting the truss to turn laterally upon the pier, as well as to permit the tipping or oscillating of the top of the pier inwardly whenever the truss should stand out of a perpendicular

line to the tracks under the piers.   In other words, Brown, perceiving that the rigid connection of the truss with the piers in such machines as that of the Murgatroyd patent and that in the Cleveland Rolling-Mill Company's use was objectionable, removed the objection by substituting articulate devices of the kind employed in the French patents for the flexible connections, upon which he essayed to improve.   Upon the basis of this substitution (for he does not, by the language of his claims, at least, found his patent upon the specific forms of articulation provided) he made four claims; the first three of them only being relied upon in the present case, and which are as follows:

"(1) In the combination with the two piers, a bridge pivoted to the upper portions of both of said piers, all substantially as and for the purposes hereinbefore set forth. (2) The combination, with the two piers and a bridge pivoted at one end to one of them, of a universal joint coupling connecting the other end of said bridge and the other pier, all substantially as and for the purposes set forth. (3) The combination, with the bridge, of one pier resting on a double track, another pier resting on one track only (so that it can be tipped toward or from the pier resting on the double track), and couplings or connections between the bridge and piers, which will permit one of the piers to tip, as explained, without in the least straining its couplings to the bridge."

It seems to us very doubtful whether there was patentable invention in this.   The need, such as it was, was not obscure; and granting that the remedy was not obvious to the ordinary mechanic, possessed of only the common skill and learning of his profession, yet, to one who was conversant, as Brown is necessarily presumed to have been, with the devices which scientific learning had already given to the world and had employed in this very art, it was not far to seek, and, indeed, was manifest.   Assuming, however, that the patentee might have been entitled to claim that the particular devices employed by him were new and patentable, he was not content with this, but made his claims broad and general, covering all forms of the designated means, saying:

"I do not, therefore, wish to be understood as limiting my claims of invention either to the precise form in which any or all of the novel features of construction shown have been carried out by me, or to the use together of all these novel features, but have so fully explained all the parts of my invention, carried out in the best forms now known to me, that those skilled in the art can understand and practice my invention, either in part or in whole, and either in the particular form in which I have so far used it or in some modified form.   What I claim is new," etc.

As these means existed in earlier machines, though not exactly in the same form, he was not entitled to make such claims, and they cannot be sustained, without restrictions from the specifications.   His invention being not of a primary character, but of special means for accomplishing results which had hitherto been attained by means but little different in their nature, the invention is limited to the particular means provided.   McCormick Harvesting Mach. Co. v. Aultman, Miller & Co., 16 C. C. A. 259, 69 Fed. 371; Noonan v. Athletic Club, 39 C. C. A. 426, 99 Fed. 90; Wells v. Curtis, 13 C. C. A. 494, 66 Fed. 318.   The broader interpretation of the claims of the patent is the one contended for by counsel for the

appellant, and, indeed, the necessities of the case require that the claims shall be interpreted thus broadly; for the connection of the truss to the stable pier in the defendant's machine is in the form of a hinge such as is used in hanging doors in which the parts are joined by a vertical pin, and the connection between the truss and the front pier bears no resemblance to the ball and socket hinge of the Brown patent, except that it admits of similar movement, relatively, of that pier and the truss. Specifically, that connection consists of a flat circular plate resting upon a like flat plate, with rims, at the top of the pier. From a bar placed across the top of the upper plate two links descend through an opening in the center of both plates, and are loosely attached below to the truss by a pin through their lower ends. In practice it would seem from the proofs that this link construction admitted all the requisite oscillation of the truss and pier both vertical and lateral, but the capacity of the upper plate to turn horizontally upon the lower supplements the capacity of the links for that motion when more than they can supply is called for. Indeed, this connection of the defendant no more resembles that of Brown than do the connections of truss and pier in the French patents above referred to. If the present invention were generic, and these French machines had been brought out later, it is clear that they would have been infringements. If we were permitted to construe these claims as restricted to the specific means employed by Brown, we might be compelled to the same result; for, the mere bringing together of elements selected from old machines to perform the same functions which they severally performed in the machines from which they were taken, and producing the same result, is not invention. Edge-Setter Co. v. Keith, 139 U. S. 530, 539, 11 Sup. Ct. 621, 35 L. Ed. 261; Campbell Printing-Press & Mfg. Co. v. Duplex Printing-Press Co., 41 C. C. A. 351, 101 Fed. 282.

It was contended for the appellee on the argument at the hearing that the spring in the truss and piers of the apparatus of the Cleveland Rolling-Mill Company and the hinges at the ends of Brown's truss are equivalents, and so that no advance whatever was made by the latter; and, among other cases, Machine Co. v. Dizer, 9 C. C. A. 382, 61 Fed. 102, is cited, where it was held that a spring employed to afford an oscillating movement to a plate with reference to its support was the equivalent of a pivot or hinge used for the purpose of affording the desired oscillation. So, in Stearns & Co. v. Russell, 29 C. C. A. 121, 85 Fed. 218, it was held by this court that a swivel joint which connected one part of a pill-dipping apparatus with another was the equivalent of a flexible tube between the same parts, where, as in that case, they performed the same function. It is not necessary for us to say that that ruling would be applicable to every case of comparison of a spring with a pivot. It would seem that it might not be, for in mechanics they do not always accomplish the result in the same way. It was held by Mr. Justice Curtis in Foster v. Moore, 1 Curt. 279, Fed. Cas. No. 4,978, that the doctrine of mechanical equivalents in connection with the use of a material part of a combination is not confined by the patent law to those elements

which are strictly known as such in the science of mechanics, but that it embraces these substitutions, which, as a matter of judgment, in construction, may be employed to accomplish the same end. But, at all events, the spring and the hinge, when used to change the angle of connected parts, are means so nearly identical, and their uses so familiar to every workman, that the selection of the one or the other means of securing the desired result could hardly be regarded as more than the exercise of common skill.

Nor was there anything patentable in the choice of a ball and socket hinge for the connection of the front pier. If the need was of the properties of a universal hinge, the ball and socket would be at once suggested. The case of L. Schreiber & Sons Co. v. Grimm, 19 C. C. A. 67, 72 Fed. 671, decided by this court, is very much in point. We there held that the introduction of a ball and socket joint between the saddle and the seat of a beer cask for the purpose of affording oscillatory motion to the saddle was not invention, for the reason that the requirement furnished a plain suggestion of a means familiar to the craft of mechanics. The decree of the circuit court is affirmed.