**CONSOLIDATED CAR HEATING CO., Inc., v. LEHIGH TRACTION CO. (RAILWAY UTILITY CO., Intervener).**

No. 618.

District Court, M. D. Pennsylvania.

July 28, 1931.

William S. Hodges, of Washington, D. C., and Joseph F. Gunster, of Scranton, Pa., for plaintiff.

J. B. Macauley, of Chicago, Ill., and John H. Bigelow, of Hazleton, Pa., for defendant.

JOHNSON, District Judge.

The bill of complaint charges the defendants with the infringement of letters patent No. 1,293,786, issued February 11, 1919; letters patent No. 1,500,566, issued July 8, 1924; and letters patent No. 1,664,778, issued April 3, 1928, issued to Lee P. Hynes and by him assigned to the Consolidated Car Heating Company, Inc., of Albany, N. Y., and prays for an injunction and an accounting.

In their answer the defendants deny the validity of the patents in suit and also deny infringement. On the pleadings and evidence, two main questions arise for disposition: First, the validity of the plaintiff's patents; and, secondly, the infringement by the defendants.

The patents cover improvements in thermostats. The thermostatic device which is claimed to infringe the plaintiff's patents was manufactured and sold to the Lehigh Traction Company by the Railway Utility Company of Chicago, Ill. This later company upon petition was allowed to intervene and defend in this suit.

It is charged that claims 6 and 7 of patent No. 1,293,786, all the claims of patent No. 1,500,566, and claims 1, 3, 4, and 5 of patent No. 1,664,778 are infringed.

Patent No. 1,293,786 covers a thermostat having novel means for supporting a

thermometer bulb within the casing, but claims 6 and 7 of said patent, which are the only ones involved here, are directed to a means for securing the base to the cover and attaching the device to a car wall or other support. This means is a screw extended through a tubular bolt to engage the car wall or other supporting member. This hollow bolt is fitted with a nut concealed under the base so that when the screw is engaged with the wall it is impossible for any one to remove the cover without first removing the device from the wall.

In an earlier device patented by the defendant, the cover and base were secured together by a hollow rivet, through which a screw was passed to fasten the thermostat to the wall of the car. Tubular bolts and tubular rivets are not uncommon, and it does not require a high order of inventive skill to substitute one for the other. Claims 6 and 7 of this patent cannot be read upon the defendant's device which is alleged to infringe.

In defendant's device, hollow bolts are used to secure the cover to the back plate, and screws passing through these hollow bolts secure the thermometer inclosure to the base. The base is screwed to the support by other screws, differently positioned, and passing only through the base.

The patent in respect to the use of the tubular bolt and screw shows so little invention that it should be construed to cover only the actual structure shown. When so restricted it is not infringed by defendant's device.

■■ Patent No. 1,500,566 discloses a thermostat comprising a metal cover and a base of molded material, a thermometer bulb provided with electric contacts and a heat-sensitive element for conducting the temperature of the car to the thermometer bulb. This heat-sensitive element, as shown, is a thin strip of copper, or other composition that is sensitive to changes of temperature, which is passed through slots in the front wall of the metal cover or casing. The mercury bulb at its lower end is surrounded by this thin strip of copper, which then passes through a slot on one side of the metal casing, around the outside of the casing, being returned by a second slot on the opposite side or breast of the casing and secured to its opposite end. Between this strip and the outer wall of the casing is interposed a strip of heat-insulating material.

Infringement of all the claims of this patent is alleged. Claim 1, which is representative, reads as follows: "A thermostatic control device comprising a base, a cover cooperating with said base to provide an enclosure, a thermostat and an element of temperature-sensitive material applied to said thermostat within said enclosure, a portion of said temperature-sensitive material being exposed to the atmosphere outside of the enclosure and acting on the thermostat independently of the enclosure and an electric contact controlled by the thermostat."

One of the defenses advanced by defendant is that this thermostat invented by Hynes and assigned to the plaintiff is anticipated by patent No. 1,386,618, issued on August 9, 1921, to W. G. Hartwig and assigned by him to the defendant the Railway Utility Company. The structure disclosed by the prior patent to Hartwig covers a thermostat comprising a base, a metal cover, a thermometer bulb provided with electric contacts, and a heat-conducting element in contact with the cover and with the thermometer bulb.

The heat-conducting element as shown in the patent, and in defendant's earlier commercial device, took the form of a thin flat plate or panel of copper, which formed a part of the metal cover or inclosure, and was soldered or otherwise secured to a thin metal clip or clamp adapted to bear upon the thermometer tube on opposite sides of the mercury bulb.

There is nothing in the prior art which shows the use of a heat-conducting element to carry the changes of temperature from the atmosphere to the thermostatic element, before the invention of Hartwig. In his structure the heat-conducting element is not insulated from the cover, but the specification points out that it may be so insulated if greater accuracy is desired.

It is clear that Hartwig was the pioneer in the invention of a thermostat with a heat conducting element, and that the thermostat invented by Hynes was an improvement on the Hartwig patent. What Hynes did was to reduce the extent of the heat-conducting element, changing it from a panel forming part of the inclosure to a comparatively small strip of heat-conducting material passed around the metal cover by means of slots positioned on opposite sides of the cover. It is described in his specification, page 1, line 44, as follows: "My invention resides in the use of a comparatively small heat-responsive element which is effectively heat-insulated from the cover or casing but applied directly to the thermometer bulb. This heat-responsive element is exposed to the atmosphere on the outside of the cover or casing but is heat-

insulated therefrom and passes through narrow slots into the inside of the casing where it is wrapped around the bulb of the thermometer."

It is claimed by the defendant, in respect to claim 1 of the Hynes patent, that "the Hartwig construction when the sensitive element is insulated, as the patent states it should be when greater sensitiveness is desired, completely anticipates this claim."

It is true that the insulation of the heat conducting element was old, in view of the Hartwig disclosure, but it appears to be true also that the reduction in extent of the heat-conducting element resulted in a more effective thermostat. The disadvantages of the Hartwig thermostat were pointed out by Hynes in his specification, page 1, line 24, where he says: "Heretofore it has been proposed to connect the thermometer bulb in a thermostat of this type with a cover-plate of a special heat responsive metal, through which the temperature changes in the outer atmosphere are communicated to the bulb. In this device, the large surface of heat-responsive metal, together with the other metal parts associated therewith tend to make the action of the device sluggish, its response to temperature changes being so gradual as to impair the electric contacts, particularly on the opening of the circuit."

"Moreover, such instruments are ordinarily mounted on the wall of a car or apartment wherein heat is inevitably stored, and soon come to partake of such stored heat and acquire a temperature that is not quickly changed by changes in the atmospheric temperature."

It has been shown by defendant that the earlier device made under the Hartwig patent was successful and is still in commercial use, but it is true that after the improvement was made by Hynes the defendant developed a thermostat specifically different from its earlier device embodying certain changes which appear to have been inspired by the teaching of Hynes. Defendant's later device has a smaller heat-conducting element, the back-plate is insulated from the base, which is constructed of nonmetal substance of low heat-conductivity, and which is also supplied with openings to admit the air and allow it to circulate under the back-plate, thus further insulating it from the thermometer inclosure.

The step taken by Hynes was small, but his claim to have produced a more effective thermostat is upheld by the conduct of the defendant. It is of narrow scope, however,

and should be limited in scope to the specific construction set forth in the patent. Unless the claims are limited to Hynes specific features of mounting his heat-sensitive element "outside of the enclosure," they are invalid in view of the Hartwig patent. Hunt, Helm, Ferris & Co. v. Milwaukee Hay Tool Co., 148 F. 220, 78 C. C. A. 116; Brown Hoisting & Conveying Mach. Co. v. King Bridge Co., 107 F. 498, 46 C. C. A. 432; Walker on Patents (6th Ed.) pages 314, etc.

The defendant's device alleged to infringe is specifically different from that shown in the Hynes patent. Defendant's device comprises two main members, a base and a separable inclosure comprising a cover and a back plate. The base is provided with a screw-hole to attach it to the wall of the car, and the front of the base is made hollow and provided with apertures designed to permit the circulation of air underneath the back-plate of the inclosure so as to miminize the transfer of the heat from the wall through the base to the inclosure containing the thermometer.

The separable inclosure comprises a back-plate and a cover composed of a glass bay-windowed portion and a struck up metal sheet frame in which the bay-window is supported. The cover is connected to the back plate and the two together to the base by the hollow bolt construction heretofore discussed. Within this inclosure is mounted a thermometer provided with electric contacts. The bulb of the thermometer is surrounded by a metal sleeve to which is joined a sheet metal conducting strip which extends through a notch in the edge of the glass bay-window and in the marginal portion of the frame. The lower end of the strip is enlarged to form a ring provided with small prongs. The ring surrounds and is supported by but insulated from the hollow bolt, and the prongs or lugs on the edge of the ring are passed through corresponding slots in the projecting lower end of the metal frame.

If the Hynes patent is limited to cover its specific disclosure, it is clear that the defendant's device does not infringe. Even if it be true that defendant's later device was developed in response to the teaching of the Hynes invention, defendant has produced a device within the scope of the Hartwig patent and specifically different from the structure of the Hynes patent. Walker on Patents (6th Ed.) page 509.

Moreover, the elements of the claims of the patent in suit cannot be read upon the defendant's device. Claim 1 specifies "a base, a cover co-operating with said base

to provide an enclosure." This is not to be found in defendant's device, where the cover co-operates not with the base but with the back-plate to form an inclosure. The base is beneath the back-plate and is open at the sides. Claim 1 further specifies "a portion of said temperature sensitive material being exposed to the atmosphere outside of the enclosure and acting on the thermostat independently of the enclosure." In defendant's device there is a portion of the temperature-sensitive material exposed to the atmosphere, but it does not act on the thermostat independently of the inclosure. The copper ring which forms the extension of defendant's heat conducting element is insulated by a fibre washer from the hollow bolt and the screw which passes through it, but it is not insulated from the metal frame which forms a part of the cover. It seems clear, therefore, that claim 1 is not infringed.

Claim 2 differs from claim 1 in specifying that the temperature sensitive element passes through the cover. This element can be read verbally upon the defendant's device but in spirit the construction is not similar. In the Hynes construction the heat sensitive element is secured in slots in the breast of the cover, while in the defendant's device the heat conducting element passes through a notch in the glass element of the cover and through the metal frame constituting a part of the cover.

As to claims 3 and 4, the so-called temperature-sensitive element is not insulated from the casing in the defendant's construction, and as to claims 5 and 6, the temperature-sensitive element is not constructed independently of the inclosure-forming means. Claims 7 and 8 fall into the same class as claim 2.

It appears, therefore, that Patent No. 1,500,566 is valid but limited in scope, and that it is not infringed by defendant's device.

Patent No. 1,664,778 describes a thermostatic device having a casing consisting merely of an open back shell of glass, to the inside wall of which a thermostatic element is screwed. It is constructed of glass, which is of low heat conductivity, and differs from the prior art in its simplicity of construction. In practice it is used with the heat-sensitive element disclosed under patent No. 1,500,566.

The file wrapper of the patent shows that the application was rejected by the Examiner, who held that there was no invention in the substitution of one material for another. After a hearing before the Board of Examiners the patent was allowed because of the simplicity of the construction and because the use of glass in place of metal lowered the heat conductivity of the casing. But Hartwig in his patent disclosed this feature of using for the casing a material of low heat conductivity, for he suggested in his specification that if a less conductive material than copper be used for the heat-interchange plate, that it would be desirable to employ a less heat conductive material for the casing and that preferably some nonmetal substance should be substituted.

The use of glass in place of metal, because of its low heat conductivity was old, in view of the Hartwig disclosure, and the novelty of the Hynes patent resides not in its use of glass but in its simplified construction which eliminated the binding-post and connection board heretofore required and made it possible to mount the casing directly upon the wall of the car, so that the back closure was formed by the wall of the car or other support.

The claims of this patent in suit are claims 1, 3, 4, and 5. Claims 1 and 5 specify that the hollow casing is open at the back. This cannot be read upon defendant's device alleged to infringe which has a casing closed at the back-plate.

When his appeal was taken before the Board of Examiners Hynes filed an affidavit, on page 2 of which he said: "My open-back casing of the present application is a one-piece casing at half the costs—no bolts, no rivets are required. The moulded glass is not merely a cover, it is also the supporting element that secures it to the wall.".

Defendant's device does not have the hollow casing open at the back called for in claims 1 and 5. Therefore it does not infringe either of these claims.

Claims 3 and 4 specify a metallic temperature detector. In claim 3 this detector is described as "exposed on the outside surface of said casing." In claim 4, it is specified as "extending over a portion of the front surface of said casing." These elements follow the disclosure of Hynes patent, No. 1,500,-566 and should be construed to exemplify the structure thereof. Under the limitations which should be placed on that patent, the defendant's device does not infringe claims 3 and 4.

And now, July 28, 1931, it follows that claims 6 and 7 of patent No. 1,293,786, all of the claims of patent No. 1,500,566, and claims 1, 3, 4, and 5 of patent No. 1,664,778,

are valid but not infringed, and a decree will be signed, in accordance with this opinion, dismissing the bill of complaint at the cost of the plaintiff.