### GALVIN v. CITY OF GRAND RAPIDS.

(Circuit Court of Appeals, Sixth Circuit. April 8, 1902.)

### No. 967.

1. PATENTS—INVENTION—IMPROVER.

An improvement of a patented combination, which consists merely in carrying forward the old idea by a mechanical change in the form of one of the elements so as to produce a better result, but without changing the mode of operation, does not amount to patentable invention.

2. SAME—IMPROVEMENT IN VALVES.

The Lynch patent, No. 392,961, for a valve embodying an improvement on the valve of the Galvin patent, No. 283,479, which consists merely in

changing the form of the wedges employed to close the disks, is void for lack of invention, the improvement being one involving only mechanical skill.

Appeal from the Circuit Court of the United States for the Western District of Michigan.

This was an appeal from a decree adjudging invalid for lack of patentable invention letters patent No. 392,961 for a valve, issued to Charles Lynch, November 13, 1888.

Franklin L. Lord and T. E. Tarsney, for appellant.
R. A. Parker, for appellee.

Before LURTON and DAY, Circuit Judges, and COCHRAN, District Judge.

DAY, Circuit Judge. This action seeks an injunction and accounting because of alleged infringement of letters patent of the United States No. 392,961, granted November 13, 1888, to James Galvin, assignee of Charles Lynch. The patent purports to be for an improvement upon the valves covered by letters patent of the United States issued to T. and J. Galvin for a valve. To understand Lynch's improvement, it is necessary to examine the Galvin patent. The Galvin valve is described by the inventors as consisting primarily of a novel arrangement of wedges acting in a plane parallel with the faces of the gate, and serving to force the latter to their seats. The drawings accompanying this patent serve to show the construction.

(No Model.)        **T & J GALVIN.**        3 Sheets—Sheet 1
VALVE.
No. 283 479                    Patented Aug. 21, 1883.

T. & J. GALVIN
VALVE
No 283.479    Patented Aug 21, 1883

Fig 3

Fig 4

T. & J. GALVIN
VALVE.
No. 283,479.    Patented Aug 21 1883

Fig. 5

Fig. 6

115 F.—33

**In the** accompanying drawings, Fig. 1 represents a longitudinal vertical section of a valve constructed in accordance with this invention; Fig. 2, a vertical transverse section of the same; Fig. 3, a perspective view, showing the working parts of the valve, one of the disks being removed; Fig. 4, a horizontal longitudinal section through the body of the valve; Fig. 5, a sectional view, showing certain details, and in which one disk only is employed; Fig. 6, a view of one of the wedges detached.

The construction of this valve and its method of operation is described by the complainant's expert as follows:

"The valve comprises a casing of the usual substantially T-shape form; the cross of the T forming the waterway, and the stem the chamber in which the gate is withdrawn in the open position of the valve. This chamber is provided with a cap in which is swiveled the operating stem of the valve, the latter being provided with a collar engaging with shoulders in the cap, whereby endwise movement of the stem is prevented. The inwardly projecting movement of the stem is screw threaded, and engages with a correspondingly screw-threaded aperture formed in a head or nut, carrying the disks of the valve. This head or nut is provided with two pairs of oppositely projecting arms or lugs, arranged, respectively, in planes at right angles to each other, one pair of thread lugs being employed for connecting the valve disks, which latter are provided with elongated apertures, formed in upwardly extending portions thereof, and through which said lugs project,—the other pair of lugs are provided with inwardly extending portions,—forming supports for a pair of swinging wedges arranged between the inner faces of said disks. The wedges are so tapered as to have their larger diameters arranged outward, and the disks are provided with oppositely tapered bearing faces. The valve casing is provided on its sides with cams or inclines against which said wedges would be forced in the inward movement of the head, the arrangement being such that when, by the turning of the stem, the head, together with the disks and wedges carried thereby, is forced inward or across the path of the waterway, said wedges will strike against the cams on the side of the casing, which will force the wedges together or towards each other, and will thereby cause the spreading apart of the disks. The proportion of the parts is such that the gate has nearly completed its inward movement before the wedges come in contact with said cams on the casing, and in the remainder of said inward movement the operation of said cams and the spreading of the disks will be accomplished. In order that it may not be necessary for said disks to move or slide upon their seats during the operation of the wedges, the elongated slots in the upward extensions of the disks, before referred to, are provided, whereby, after said disks have come into frictional contact with the seat faces, they may remain stationary during the further movement of the head in operation of the wedges."

It is claimed that this construction was defective in operation in the fact that when the valve is placed horizontally the upper wedge has a tendency to fall by gravitation between the disks before the same were in place, thereby causing the disks to separate prematurely, and before they were in full position across the waterway. The object of the Lynch patent is to remedy this defect in the Galvin valve, and he states the object of his invention to be an improvement upon that patent, and to consist of a novel form or construction of the wedges for the purpose of preventing them from falling down from gravity. And, he says, "in all particulars except the form and proportion of the wedges, the valve may be of the same construction as set forth in the patent above referred to; but instead of making the

wedges as shown in said patent their inner face is filled out and made straight to form bearing surfaces to rest upon the inner edge of the screw stem, and prevent the wedges approaching each other, except when the nut or yoke passes sufficiently far down upon the screw to carry the wedges clear of its end, which will occur only at the time the valve disks begin to bear upon the stops which arrest their action." This is the full scope of the discovery and alleged invention of Lynch. It is accomplished by so widening the wedges or providing them with inward projections that they will bear upon the valve stem so long as that is between them, and only begin to spread the disks when the stem is withdrawn, which occurs just as the disks are in place and ready for the wedging process.

C. LYNCH.
VALVE.

No. 393,901.                Patented Nov. 13, 1888.

In the accompanying drawings, Fig. 1 is a longitudinal sectional view of a valve embodying the improvement; Figs. 2 and 3, transverse sections of the same, the former showing the valve closed and the latter showing it partly open; and Figs. 4 and 5, perspective views of one of the wedges.

The Lynch patent, which is illustrated by the accompanying drawings, has two claims, which are as follows:

"(1) In combination with a shell or casing, a screw stem swiveled therein, a nut or yoke threaded to receive said stem, disks carried by said yoke, and wedges also carried by said yoke and located between the disks, said wedges having their inner or opposing faces extended inward to bear against

the sides of the screw stem, whereby the wedges are prevented from approaching each other, and consequently from forcing the disks to their seats until the screw stem is withdrawn from between them.

"(2) In a valve such as shown, the combination of a casing provided with a waterway, disks to close said waterway, wedges located between the disks and adapted to force the latter to their seats, bearing faces for the wedges, and a stem of a diameter corresponding to the distance between the inner faces of the wedges when the latter are separated, said stem being arranged to enter between the wedges as the valve is opened, and to withdraw from between as the disks reach their seats, whereby the wedges are prevented from acting upon the disks before the latter reach their seats."

It is thus made evident that the advance made by Lynch upon the Galvin patent is the use in his combination of the "novel form of wedge." He has taken the wedges shown in the Galvin patent, and, by adding to them or "extending inward their opposing faces," he has wedges which are supported upon the screw stem until the withdrawal thereof permits the same to approach each other as the wedging process begins. This is practically the same operation as that of the Galvin valve when carried through successfully. The trouble with it was that the upper wedge sometimes approached the lower one prematurely, causing the wedging to begin before the valve was seated. Lynch, the patentee, was a traveling salesman for the manufacturers of the Galvin valve. While upon the road he learned of the defective operation of the valve from customers, and made or caused to be made a model embodying his invention, which he assigned to James Galvin. Is there patentable novelty in this improvement? An improvement to justify the granting of a patent, and the consequent protection of a monopoly of the right to use and sell the same, must be the result of the exercise of the inventive faculty, as distinguished from the mere advance which a mechanic skilled in the art may make. It is true that it has been said upon high authority that in the law of patents it is the last step that wins, but this stride must be made by the inventor, who originates, and not by the mechanic, who merely improves. It is also true that the cases recognize the fact that an improvement when made is not to be deprived of the protection of the law because it seems simple after it is accomplished. There are cases where many have been striving to reach a given result without success, when there comes upon the scene the inventor who solves the difficulty in a manner which makes strange the want of earlier discovery of a thing so simple, but who is, nevertheless, entitled to the protection of the patent law. But the fact remains that it is only original invention which the patent law is designed to protect. A combination of old elements, producing a new and useful result, has frequently been held patentable. In the Lynch patent there is no new element. The form of the wedge is not the subject of the patent. This form, it may be, secures a more uniformly good result, but that is the extent of the advance. The Galvin patent does not limit its combination to any specific form of wedge. Its merit consists in having the wedges so arranged that they will be operated upon by the projections in the casing so as to force the wedges inwardly and the disks apart as the same are seated. The Lynch improvement affords a better means of doing this by enlarging the wedge

so that it will be held up by the face of the screw stem. This is rather the mechanical improvement of one element of the combination than a new combination. In the specifications of the Lynch patent it is suggested that the same effect—keeping the wedges apart—may be had by providing the end of the screw stem with a block for that purpose, which, the inventor says, "I consider merely the inferior equivalent of the plan above described, and shown in the drawings." Such a device would clearly be but a mechanical improvement, more obvious perhaps than the advance under consideration. It seems to us that a mechanic skilled in the making and using of such valves, observing the difficulty, could not have failed in the normal progress of improvement to have hit upon the device shown in the Lynch patent. In the Galvin patent the wedges are not limited in construction to any particular form. It is true that at first they were made with recessed faces so as not to contact with the stem, but the proof also shows that as sometimes made they came into contact with the screw stem. On Lynch's attention being called by customers to the occasional falling of the wedge, he made or caused to be made a model showing a wedge "built out" so as to contact the stem, and thereby be kept in place until the stem was out of the way. This seems to us a change in degree only of the width of the wedge, and not to arise to the dignity of invention, although it is true that this very method was not hit upon promptly by the inventors and manufacturers of the Galvin valve. Lynch carried forward the old idea by a mechanical change in one of the elements which produced better results. Such a change is not patentable. Guidet v. Brooklyn, 105 U. S. 550, 26 L. Ed. 1106. "Structural changes of form and proportion, although they improve the operation without changing the mode of operation, and produce a much better result, although one of the same kind, are only different and better forms of embodying the same idea, and illustrate the difference between mechanical skill and inventive genius." Rob. Pat. § 238, note 1. "The law requires more than a change of form, or juxtaposition of parts, or of the external arrangement of things, to give patentability." Reckendorfer v. Faber, 92 U. S. 347–356, 23 L. Ed. 719. The wedge in the Lynch device performs the same function as that in the original patent. It does the same work in the same combination in effecting the result decided. By the change in form it does it better than the wedge first used. This change does not, in our judgment, amount to that invention which it is the design of the patent law to protect.

Decree affirmed.