EAMES et al. v. WORCESTER POLYTECHNIC INSTITUTE.

(Circuit Court of Appeals, Sixth Circuit. May 21, 1903.)

No. 1,108.

1. PATENTS—ANTICIPATION.
   A device which if later than that of a patent would infringe is an anticipation if earlier.

2. SAME—CHANGE OF FORM.
   The fact that a simple element in a combination is made of one part instead of two, as in a prior combination, does not affect their substantial identity, or avoid anticipation, where each performs the same func-

tion and accomplishes the same result by means which are mechanically similar.

**3. SAME—INVENTION—EXTENDING APPLICATION OF OLD DEVICE.**

The mere carrying forward or extending the application of a prior device with a change only in degree does not amount to invention.

**4. SAME—INFRINGEMENT—TWIST DRILL GRINDING MACHINES.**

The Walker patent, No. 411,845, for a twist drill grinding machine, claim 1, which covers the combination of a drill rest with the holding mechanism, is void for lack of invention, in view of the prior art. Claims 2 and 6, which include as an element of the combinations therein described a screw-threaded axis of oscillation between the bracket carrying the holder and the other part of the machine, *held* to disclose invention as to such device, and to be valid, but not infringed.

**5. SAME.**

The Walker patent, No. 425,839, for an improvement on the twist drill grinding machine of patent No. 411,845, claims 1 and 2, *held* valid. Claim 1 also *held* infringed, and claim 2 not infringed.

Appeal from the Circuit Court of the United States for the Northern District of Ohio.

Fred L. Chappell, for appellants.

Jesse B. Fay, for appellee.

Before LURTON and SEVERENS, Circuit Judges, and COCHRAN, District Judge.

SEVERENS, Circuit Judge. This is a suit in equity upon a bill filed by the appellee complaining of the infringement by the appellants of claims 1, 2, and 6 of letters patent No. 411,845, issued October 1, 1889, to O. S. Walker, who subsequently assigned to the complainant, and claims 1 and 2 of letters patent No. 425,839, issued April 15, 1890, to the said Walker as assignor to the complainant; both patents being for improvements in twist drill grinding machines. The relief sought was an injunction and an accounting for profits and damages. The defendants answered denying the validity of the patents, and denying the infringement of either of them. Upon the hearing on pleadings and proofs, it was held and decreed by the Circuit Court that the patents in respect to the claims above enumerated were valid and were infringed, and that an injunction should issue, and the profits and damages ascertained. The defendants assigned errors, and appealed.

Both patents relate in general to the same structure, the last being for improvements upon the first. Twist drill grinding machines are shown to have been in use for some time prior to Walker's inventions, and a number of patents had been issued therefor in England and the United States. They consist of two parts—the grinding wheel with its appurtenances, and the drill-holder, with the devices for properly presenting the drill to the wheel for grinding the lips of the cutting end of the drill. These devices are the subjects of the improvements claimed to have been made by Walker, a well-known form of holder being presupposed, and they are for parts only of the means by which the holder carrying the drill is supported and manipulated in the operation of grinding. There is another congeries

¶ 3. See Patents, vol. 38, Cent. Dig. § 19.

of devices which contributes .to the movements of the drill-holder, but it need not be here detailed. The drill-holder shown in the Walker patents consists of a V-shaped groove in which the drill rests, having an adjustable post or abutment at the outer end to prevent the retreat of the drill. At the fore end of the holder is a rest projecting inwardly from one side of the groove, which, entering one of the flutes of the drill and engaging one side of the flute a short distance back from the point, serves as a gage in shifting the drill from one side to the other, supports the drill, and prevents it from turning in the holder while it is being ground. The drill is held in the groove by the hand of the operator, and the grinding is done first on one lip and then on the other, the lips being alternately presented to the wheel by turning the drill half way over in the successive step in the operation. The holder and the wheel and their relations are shown in Fig. 2 of patent No. 411,845, thus:

The rest above spoken of is shown engaging one side of a flute of the drill in Fig. 4, as follows:

The rest is the projection, t, and is secured to the fore end of the right-hand member of the groove, V, by screws, t'.

The patentee states that the line of contact of the rest with the drill is inclined to the bisecting line of the V angle, and intersects it near the apex of the angle, but does not state the extent of such inclination. He explains that his object in this construction is "to compensate for the variation in thickness of the drill-points." The first claim is upon the combination of this drill-rest with a grooved holder, and is as follows:

"The V-grooved drill-holder, H, in combination with the stationary drill-lip rest, t, which has its line of drill-contact inclined to the bisecting line of the V angle, and intersecting the same near the apex of said angle, as and for the purpose described."

As V-shaped holders were undoubtedly old, the substance of the claim is in the provision of the drill-rest. Several forms of drill-rests, designed for the purpose of gaging the rotation and of preventing the further rotation of the drill while being ground, are shown in previous patents, and the question is whether the form and location of Walker's drill-rest indicate the exercise of the faculty of invention or merely of the skill of the craftsman working upon the things supplied by the prior art. A patent issued to Champlin, October 31, 1876, showed a drill-holder having a grooved bed in which was provided a projection "near the end where the cutting edge of the drill comes when in the machine." One lip of the drill rested upon this projection while the opposite edge was being ground, and it gaged the rotation of the drill when shifted in the holder. When one lip of the drill was ground it was turned half way over, and the ground lip was rested upon the projection while the opposite lip was ground. While it is not stated in so many words that this relation of the drill to the rest is a means for preventing the rotation of the drill while being ground, it is obvious that, as the inner surface of the lip is inclined, the contact of the rest would co-operate with the clamp in preventing the rolling of the drill; and it serves as a stop when the drill is turned halfway over, and fixes the alternate positions of the drill for grinding its respective lips exactly alike, thus securing equal proportions to the opposite lips of the drill. It should be observed that the contact of the rest in this construction, though spoken of as being with the lip, is nevertheless within the flute and against one of its inner segments next the edge, and is far enough from the end of the drill to avoid contact with the wheel, and that the drill-rest is stationary. This projection or rest in the holder forms the substance of the first claim in the patent, as it does in Walker's. And it fulfilled two of the characteristics of Walker's; that is, the rest was close to the cutting end of the drill, and it was stationary.

A patent to Stetson for a twist drill grinding machine, dated February 15, 1881, shows a lip-rest attached by a set-screw to the fore end of the groove in which the drill was clamped, and projecting into the flute of the drill far enough back from the end of the drill to clear the grinding wheel. It was movable only in the direction toward the drill. The lip of the drill, or rather the flute just back of the edge, as in the Champlin patent, was placed against the rest, or "finger" as it is called; the latter being "designed to enter the groove or lip of a drill for the purpose of regulating and limiting the adjustment and revolution of such drill relatively to the grinding wheel," as stated in the specification. From the description of this rest and its attachment, it would seem that it is adapted to perform the same service as the drill-rest of the Walker patent; that is, as a gage and a rest.

In the patent to Birkenhead of October 6, 1885, for "mechanism for supporting and guiding drills while being ground," there is shown a V-shaped drill-holder at the front end of which was attached a drill-rest adapted to engage one side of the flute of the drill and arrest its rotation while being ground, and serving also as a guide to indicate where the rotation must stop when rotated to present the opposite

lip for grinding. This rest was adjustable for different sizes of drills by means of a screw actuating it, set parallel to a line which would coincide with the contact face of Walker's drill-rest; so that when the rest was moved upward or downward by the screw the contact face of the rest would traverse a line corresponding substantially to the "line of contact" of the rest in the Walker patent, and which would be "inclined to a bisecting line of the V angle" of the holder. Fig. 9 of the Birkenhead patent, here reproduced, shows the gage or rest arranged against the front end of the V-shaped holder.

*Fig. 9*

L is the rest, and M the adjusting screw.

There was also a patent to Pickering, dated July 31, 1883, for a "machine for grinding drills," in which the supports for the drill were V-shaped at the top to receive the drill, and the one bearing the fluted part of the drill was made thin in that part for the purpose of allowing the side of the V to enter the flute of the drill and engage the sides thereof, thereby to prevent the rotation of the drill in grinding. The drill was turned by the hand, as in the use of other like machines, to grind the opposite sides alternately.

The idea of using the gage as a rest was not new with Walker; it was so used, for instances, in the Bancroft patent of March 9, 1886, and in the Champlin patent above noticed. But, if this were not so, its adaptation to perform this function would be equally within the scope of that patent, whether this particular use was contemplated or not (Stow v. Chicago, 104 U. S. 547, 550, 26 L. Ed. 816; Goshen Sweeper Co. v. Bissell Carpet Sweeper Co., 19 C. C. A. 13, 72 Fed. 67, 74, and the cases there cited); and in the Chase patent, hereafter referred to, direction is given that the operator shall hold the drill against the guide-rest while it is being ground. In these patents what is sometimes called a "rest" is also called a "gage" or "guide"; but in all cases it serves, or is adapted to serve, both as a gage and a rest. Other prior patents on such machines contained devices for the same purpose, but the foregoing seem the most relevant.

We have found then that, at the time when Walker proceeded to determine the form and location of his drill-rest in the holder, he had before him rests located close to and at the cutting end of the drill, and so adjusted to the holder as to enter the flute of the drill and engage its edge, thereby gaging the rotation of the drill and arresting the rotation at the proper place on the opposite sides of the drill so as to secure equality in the grinding of the lips. He found all this, for instance, in the Birkenhead patent; and the extent of his improvement may be, as we think, very justly measured by comparing his rest with that of the Birkenhead patent, and then determining whether in the then state of the art invention is shown in the difference between the two forms. From the description which we have given of them, it clearly appears that the Birkenhead rest suggested

a line of contact with drills of progressive sizes. In its successive adjustments from point to point the rest traversed the line of contact of Walker's rest as described in his claim 1. It was intended and adapted to compensate for the variations in thickness (size) of the drill-points, which Walker stated to be the object of his construction. Walker made his rest with a continuous contact line. Each remains in the same location and has the same relation to the other parts of the machine, and the only difference of any substance between them is that one is adjustable, while the other is stationary. Each performs the same office and does it in the same way. Making it stationary saves the trouble of adjustment. But this fact does not necessarily make the difference patentable. It is generally the consequence of mechanical improvements perceived by the intelligence of the workman trained in his art that more or less convenience will follow. It is the consequence expected. Florsheim v. Shilling, 137 U. S. 64, 11 Sup. Ct. 20, 34 L. Ed. 574.

It seems to us that this first claim, while it calls for an element somewhat different in form from anything previously employed, yet does not indicate more than what might reasonably be expected in the normal progress of mechanical skill. To try the question by a recognized test, suppose the Birkenhead drill-holder and rest had been brought out later than Walker's, would the difference have cleared the former from the charge of infringement? We think not. It would be open to say that Birkenhead got his idea of a contact line of support inclined to the bisecting line of the V holder from Walker, and all he had done was to make his rest adjustable, and that when adjusted along the contact line of the Walker patent it served the same purpose by equivalent means, and it might justly be claimed to be a mere evasion; and, if it would infringe, it would anticipate if earlier. Miller v. Eagle Mfg. Co., 151 U. S. 186, 14 Sup. Ct. 310, 38 L. Ed. 121.

In the Patent Office, Walker distinguished the Birkenhead rest by saying that in the latter the lip rest was "more in the nature of a finger or hook supporting the lips" of the drill and was "mentioned as a gage"; but the difference, although it seems to have persuaded the examiner, is not substantial, for both constructions perform both functions, that of supporting the lip and that of gaging the rotation, in the same way and produce the same result; and it is evident that either device could be used in both machines. The rest of the Walker patent has no different effect in the operation of the combination from that of the Birkenhead rest in combination with the holder, and that fact seems decisive, inasmuch as the claim is not for the rest, but for a combination of which it forms a part. Moreover, Birkenhead does not limit his gage to a "finger"; he describes it as a gage arranged against the front end of the holder, and provided with a screw for adjusting it nearer to, or further from, the bottom of the holder, as the size of the drill to be ground may require. "This gage," he says, "is to extend into one of the spiral grooves of the drill and against one edge thereof, in which case the gage determines the position of the part to be ground." Birkenhead made no claim to invention in the construction of his gage, and it thereby became

public property. But the result is the same whether he or the public was entitled to the benefit of it.

The substantial identity of the Walker and Birkenhead rests is not affected by the circumstance that in that of the former it is composed of one part, while that of the latter is composed of two. 1 Robinson on Pat. § 252; Stearns v. Russell, 29 C. C. A. 121, 85 Fed. 218; Brown Hoisting Machine Co. v. King Bridge Co., 46 C. C. A. 432, 107 Fed. 498, where we held a spring to be the equivalent of the parts of a hinge.

As has been often said, no question of this sort would arise if there was an exact likeness. In all cases, when such question is presented, the inquiry must be directed to the equivalency of the construction, and that relates in mechanics to similarity of means, functions, and result. Mere variations in the forms of means, not affecting the manner in which the functions are performed, are not material. An illustration of this doctrine is found in the recent decision of this court in the case of Bundy Mfg. Co. v. Detroit Time Register Co., 36 C. C. A. 375, 94 Fed. 524, in which the claim included, as one of the parts of a time recorder, a key described as having a fin on one side of it and performing its function by being turned in the mechanism. The defendant instead employed a key without a fin, which performed a similar function by being pushed forward into the mechanism. The key of the defendant was held to be an equivalent from the similarity of the mechanical principle found in the operation and effect of the different keys; and in the same case it was held that the device of a hammer striking down the recording strip upon type in a bed below was infringed by a structure in which no hammer was used, but the types were pressed down upon the recording strip by mechanism adapted to that purpose. So, in the case of McSherry Mfg. Co. v. Dowagiac Mfg. Co., 41 C. C. A. 627, 101 Fed. 716, a claim in a patent for a grain-drill, which included a pair of clamping plates holding rigidly the forward ends of the pressure springs and pivoted to the drawbars carrying the hoe, was held by us to be infringed by a structure which differed from it in the respect that the clamping plates were omitted, and the forward ends of the springs themselves were pivoted to the drawbars, the clamping plates being regarded as prolongations of the springs. And in Stearns v. Russell, 29 C. C. A. 121, 85 Fed. 218, we held a flexible rubber tube connecting the parts of an implement to be the equivalent of a swivel joint when used in the like relation with other parts.

Another rule of patent law is that the mere change of size or form of a simple structure, or of an element in a combination, made for the purpose of accommodating it to its work within the sphere of its contemplated uses, does not amount to invention. In the Champlin patent, a stationary rest or "projection" is provided, which, located as directed by the specification and shown by the drawing, would serve the same purpose as Walker's in grinding drills of the smaller sizes, and its point of contact is on a line inclined to the line bisecting the angle of the holder. An extension of that projection, with possibly some slight change of form, would meet the requirements of the Walker rest. This would constitute simply a mere carrying forward or an extended

application of the original device with the change only in degree, and this would not be patentable invention. Smith v. Nichols, 21 Wall. 112, 22 L. Ed. 566; Grant v. Walter, 148 U. S. 547, 583, 13 Sup. Ct. 699, 37 L. Ed. 552; Burt v. Evory, 133 U. S. 349, 10 Sup. Ct. 394, 33 L. Ed. 647; Market Street Railway Co. v. Rowley, 155 U. S. 621, 15 Sup. Ct. 224, 39 L. Ed. 284; Fox v. Perkins, 52 Fed. 205, 3 C. C. A. 32; Galvin v. City of Grand Rapids, 53 C. C. A. 165, 115 Fed. 511. And, whether the rest be located upon the one side of the groove or another, the principle of its operation would not be affected.

The second claim is this:

"The combination with the drill-holder, H, and guide-bracket, G, of an inclined and screw-threaded axis of oscillation, along which the drill-holder is helically advanced by said screw-thread when oscillated, as above set forth."

This claim, which does not include the drill-rest, is for the combination of the holder, the bracket, G, which immediately supports it, and the inclined and screw-threaded axis of oscillation between the bracket and another part of the machine not otherwise here involved. The substance of the invention here claimed is in the combination which shall include the inclined and screw-threaded axis of oscillation. By reference to Fig. 2, above shown, the bracket, G, is seen; and by reference to the specification it is readily understood that the axis of oscillation of the bracket, and consequently the holder, is a screw-threaded member connected with the bracket and lying along the inclined line, a-b, which screw-threaded member engages with the screw-threaded interior of the sleeve in which it turns. It is also seen how, by oscillating the bracket (and holder) upon the inclined and screw-threaded axis, the end of the drill is helically advanced and brought into contact with the grinding wheel. This is done by the operator while he is holding the drill to be ground. Stops in the oscillating parts limit the oscillation to only a small part of a circle. Certain advantages are claimed to result from the employment of this device in the manner in which the drill is ground and shape given to its cutting edges and to the heel of the lips, whereby the proper clearance is obtained. This invention, in respect to the device of the screw-threaded axis of oscillation, seems to be novel in such structures, and we have no doubt of its patentability. But the defendants say they do not infringe this claim because, as they say, while they used a spindle on which their bracket turns, they do not use a screw, but other and different means for effecting the oscillation of the bracket and presenting the drill to be ground; that is to say, it is by turning the bracket by such other means that the drill is advanced to the wheel. And this appears to be the fact. If Walker had been the first to devise an oscillating bracket to support the drill-holder and associated means for simultaneously advancing the drill, it might well be that such invention would dominate all forms of means by which like mechanical functions should be performed. But he was not. In the Bancroft and Thorne patent of January 9, 1883, in referring to former constructions, it is recited that "the shape or clearance of the cutting edge has been obtained in some machines by rocking the drill when held in a chuck about an axis parallel with the edge to be ground.

This is objectionable, as giving a uniform and cylindrical form of clearance over the whole length of the cutting edge. In this shape the clearance cannot be at the best angle at all points, but will be excessive at some, and the edge at such places will be weak, so that the drill will wear irregularly and require frequent sharpening. In other machines the drill is moved forward by a cam, while it is rocked about an axis parallel with the cutting-edge. This plan merely changes the shape of the lip from cylindrical to some other curve, which, however, is still uniform over the whole length of the lip, and is therefore open to the same objection as the first. In some cases an attempt has been made to obtain the necessary clearance by rotating the drill about its own axis, and at the same time swinging it sidewise, and also in some cases giving it at the same time a slight forward movement by the cam."

And in the patent to Chase of November 24, 1885, the drill-holder is supported by a bracket which rocks laterally on a pin or rod, the oscillation being limited by a set-screw. This rotary movement causes the front end of the drill to rise, and provision is made for regulating the combined vertical and lateral movement of the drill so as to present the lip to be ground in the proper way and to give the proper clearance at the heel.

The resultant movement of the drill in both these last-mentioned patents would be helical. And Walker himself admits in his specification for this patent that the prior art showed "machines also that make a surface approximating a helicoid by means of cams and like devices." And it was the making of the surface of the bottom of the hole helicoidal that constituted the peculiar result of his own construction. In this connection, it is material to notice that Walker does not, either in this claim or in the sixth, include the means for changing the relations of the bracket and the drill-holder. The helical advancement is expected to occur without the co-operation of that element which adjusts the relation of the bracket and the holder, or being affected by it. It is clear that Walker was not the first to devise the oscillating bracket supporting the holder, but he screw-threaded the axis of oscillation. Probably the employment of the screw-threaded axis of oscillation by Walker effects its purposes in a more certain and uniform way than had previously been done; certainly it effects them in a different way. But the defendant does not use the screw-threaded axis. The spindle on which the bracket is supported does not advance or recede in the sleeve in which it rotates, and in fact is prevented from such movement by a circular groove in the spindle into which a screw extends, the screw being set in the side of the sleeve. The drill is advanced to the grinding wheel when the holder is rotated upon the spindle, and the end of the drill is raised and lowered by the rotation one way and the other; but this is effected not by anything in the nature of a screw-threaded axis of oscillation, but by such an adjustment of the angle of the parts of the machine as, in concert with the rotation, produces that result.

The complainant says that the defendants use a cam instead of a screw, and that this is the equivalent of a screw. But, as we have seen, the use of a cam to effect the purpose proposed by Walker was

an old method upon which he claimed his own to be an improvement. The only thing, however, in the defendants' machine which can be called a cam, is found on the face of the upper end of the sleeve on which the bracket rests and revolves. The plane of the face being inclined, the turning of the bracket on the incline tends to raise or lower the point of the drill. This inclination has some, but not very close, resemblance to a cam. But whatever it may be called, it had its equivalent in former structures, wherever by rotation the drill was advanced toward the grinding wheel. And it seems quite clear that the defendants' structure more nearly resembles in the feature we are now considering the devices in the earlier patents than it does that of the Walker patents. The construction of the defendants' machine in this particular will be readily understood from Fig. 1 of the drawings of the patent No. 613,127, under which they manufacture:

At 9 is the set-screw which, passing through the sleeve, enters the circular groove on the spindle, as above stated. These devices provide for one way of presenting the drill to the wheel; Walker provided another. Still earlier inventors had so far advanced the art that each of these ways was only an improvement, to the extent that they are such, and in the respect that they differ from the former art there is little resemblance between them, if, indeed, there is any. We think this second claim is not infringed.

The sixth claim is as follows:

"The drill-holder, H, the stationary lip-rest, t, and the guide-bracket, G, combined with the inclined and screw-threaded axis of oscillation, G, arranged to helically advance the drill along the axis toward the grinding wheel as the drill-holder is oscillated, as described."

This claim is for a combination of the same elements as claim 2, with the drill-rest added. The addition of the drill-rest does not defeat the validity of the claim; for assuming, as we do, that it is not of itself sufficient to support a patent, the uniting it with a combination which is patentable cannot render the new combination invalid. Combined with the new device, the conjoint mechanical effect is new. For this reason the validity of the sixth claim is affirmed. But for the reasons stated, in dealing with the infringement of the second claim, the screw-threaded axis not being used by the defendant, we think this claim also is not infringed.

Patent No. 425,839 is for improvements on No. 411,845. Claims 1 and 2 of the later patent, it is alleged, are infringed. But these claims relate to another feature in drill-holders than those we were required to consider in examining the first of the Walker patents. This other feature was, however, shown in that patent and was made an element of the seventh claim. By referring back to Fig. 2 of the first patent, there is seen, at the upper edge of the bracket, G, a scale marked "n," and an index marked "m" extending down from the holder. On the lower face of the holder is an angular slide working on dovetailed ways on the bracket and operated by the hand wheel and the screw, 1. The marks on the scale and the index, m, indicate the proper position of the slide for different sized drills. By these adjustments, the proper presentation of drills of varying sizes to the grinding wheel was effected. But, in order to make the proper adjustment, the size of the drill must be first ascertained. The holder was then set by means of the screw so that the index would point to the place on the scale denoting that size of drill, and thereupon the drill was put into the holder for grinding. Claims 1 and 2 of the later patent substituted for these means of effecting the proper lateral adjustment of the holder a pair of jaws having their faces opposite to each other and on the same plane, one of such jaws being fixed on the holder and the other on the bracket. By putting a drill of any size between the jaws, and sliding the holder until the jaws shall both engage the drill, the holder is properly set for carrying that drill or any of that size, and is there secured in that position.

In terms, the claims are as follows:

"(1) The combination, with a twist-drill grinding machine, of the drill-holder top, D, and the oscillating bracket, C, provided, respectively, with the projecting gage-jaws, $D^4$ and $C^4$, arranged to simultaneously caliper the drill to be ground and to axially adjust the drill-holder, as above set forth.

"(2) In a twist-drill grinding machine, the combination, with a V-grooved drill-holder, of the parallel gage-jaws, $D^4$ and $C^4$, whose contract faces are inclined to the line of their adjustment, for the purpose above described."

The novel feature in each of these claims consist of the gage-jaws combined with other elements of a drill-holder. The first includes gage-jaws generally; the second contemplates the gage-jaws having their contact faces inclined to the line of their adjustment, and parallel with each other.

Why this limitation was imposed in the second claim does not appear. It is possible that it may have been done in consequence of something seen in the prior art. But, if so, we are not apprised of what it was, and cannot act upon mere conjectures. As the claims include different elements in their combinations, they constitute independent inventions. Whether the express limitation put upon the gage-jaws in the second claim is an implication that the gage-jaws of the first claim were intended to be perpendicular to the line of their adjustment, and the first claim so construed, is a question suggested by a comparison of the two claims. We think that, inasmuch as the second claim seems to require that the gage-jaws shall have parallel faces, it is not necessarily to be implied that the gage-jaws of the first claim shall be perpendicular to the line of their adjustment.

The model of the defendant's machine, exhibited to us, shows a projection on the holder having a circular hole in its center and a jaw on the bracket having an outwardly inclined face, both contrived for and serving the purpose in use of the gage of the second Walker patent; that is to say, of adjusting the axis of the drill as it will lie in the holder by first inserting the drill in the hole of the projection on the holder, and then swinging the holder upon the supporting bracket until the projection on the latter engages the side of the drill. The relation—that is, the angle—of the holder to the bracket is thereby properly fixed for grinding that size of drill.

We think that both the claims 1 and 2 of the Walker patent, No. 425,839, are valid, and that claim 1 is infringed. But, as the faces of the gage-jaws of the defendant's structure are not parallel, we think claim 2 is not infringed. To hold otherwise would be in effect to declare that the limitation put upon the gage-jaws by claim 2 was wholly nugatory. This we are not at liberty to do.

The result is that the decree of the court below will be affirmed as to claim 1 of patent No. 425,839, and reversed as to claims 1, 2, and 6 of the patent No. 411,845, and claim 2 of patent No. 425,839. The cause is remanded, with directions to take further proceedings with respect to the claim here held valid as may be in conformity with law and with this opinion. The costs in this court and those hitherto incurred in the court below will be borne in the proportion of one-fourth by the appellant and three-fourths by the appellee.