STREIT v. KAIPER et al.

(Circuit Court of Appeals, Sixth Circuit. March 16, 1906.)

No. 1,472.

1. PATENTS—INVENTION.
    An increase in the size of an existing device to more completely fulfill its purpose does not constitute patentable invention.
    [Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, § 19.]

2. SAME—FOOT REST FOR CHAIRS.
    The Streit patent, No. 668,268, for a foot rest for chairs, which slides on ways under the chair seat and when not in use turns down on hinges against the front of the chair frame and becomes in appearance a part of the chair front, is void, for lack of patentable invention in view of the prior art.

Appeal from the Circuit Court of the United States for the Southern District of Ohio.

W. F. Murray, for appellant.
A. M. Allen, for appellees.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. The bill in this case was filed by the appellant for the purpose of obtaining a decree restraining the appellees from infringing the rights secured to him by letters patent No. 668,268, issued February 19, 1901, upon an application filed October 2, 1899, for improvements in foot rests in chairs, and for damages and profits. The answer denied that there was invention in the device which was the subject of the patent, and also denied infringement. Upon the pleadings and proofs, the court at the hearing held the patent void for lack of invention, being of opinion that the device for which the patent was issued had been anticipated by previous public uses by other parties.

The subject of the patent was a foot rest for chairs. It will be most readily understood by exhibiting figure 1 of the drawings with a short explanation.

Fig I

The side rails, d1 and d2, of the frame of the rest slide through the slot, a7, and in ways between cleats fastened lengthwise of the inside of each of the side frames, a1, of the chair. Cross-bars, of which d4 is one, hold the side rails of the foot rest in place, and stiffen it. On the front of the frame is hinged a foot rest upholstered on one side to conform to the upholstering of the chair. As seen in the figure, the foot rest and its frame are drawn out and ready for use. When not in use the frame is pushed back under the seat, the foot rest is turned back on its hinges until its flat back is parallel with the front piece of the chair frame, and is then pressed close upon the latter. When this is done, the foot rest is not apparent, and the whole impression is of a chair simply.

Prior to the application for this patent many other patents had been taken out of the patent office for foot rests and improvements thereof. There were foot rests hinged to the front of a frame extending forward from the chair seat. Some foot rests were upholstered like the chair and some of them were so constructed as to turn up and lie flat against the front of the chair frame. Some foot rest frames were provided with ways under the seat of the chair for sliding back out of sight, and some of the frames and ways were of wood and some of metal. The ways themselves were sometimes built upon the inner side of the chair frame, or consisted of long slots in the body of the chair frames. It is not necessary to go further in this enumeration of old features.

The proceedings in the Patent Office are shown by the evidence, and it therefrom appears that the application was repeatedly rejected upon references to former specified patents. The difficulty which

the office apparently found was this: While the specification seemed to show a foot rest extending at its ends beyond the front ends of the sides of the frame, and beyond the ends of the slot, or way, in the front piece of the chair frame, so as to completely hide them from view, yet the claims did not require a foot rest sufficiently long to subserve that purpose; and it was held by the examiner that the invention as described by the claims was anticipated by the references given. On the fourth rejection which referred to a patent to Petry, the solicitor for the applicant distinguished his invention from Petry's by pointing out that when Petry's foot rest "is pushed in, all these elements can be seen, the ends of the slot, the ends of the bars, and the foot rest hanging between them," adding, "Does it then look like a chair without a foot rest?" On the fifth rejection the commissioner of patents sent to the applicant the following communication:

"The claims in this case have been reconsidered and no reason is seen for changing the position heretofore taken by the office. The claims are again rejected on the references and for the reasons of .record. Applicant argues that in the device shown by Petry, when the parts are folded the ends of the bars, 8, and the ends of the slat may be seen, and the nature of the part 22 [foot rest] is apparent to any one. While this seems to be correct, it is no argument, because applicant has not, except by functional statement, if at all, pointed out the construction and relation of parts whereby he gets the advantages claimed for his device. If these differences are brought out by language properly setting forth the construction and relation of parts, such claims will be further considered."

Acting on this last suggestion the applicant amended all his claims so as to make the combinations to include a foot rest of a length equal to, or greater than, the slot or way in the front of the chair. This seems to have· satisfied the examiner, and the patent was allowed. The result is that the patent is limited· to combinations which include a foot rest equal in length to, or longer than, the slot in the front of the chair frame, a device intended, as the patentee says, to improve the appearance of the chair and make it look like an ordinary chair. Thomas v. Rocker Spring Co., 77 Fed. 420, 26 C. C. A. 211. This conclusion does not depend necessarily upon any estoppel arising upon the concession of the applicant in order to obtain his patent. It results from the very terms of the claims, each of which contains as an element in the combination a rest thus specifically described. But the conclusion of the examiner in the patent office that the earlier patents took away all ground for claiming novelty in foot rests not of a length sufficient to cover the opening in the chair frame and the ends of the side rails of the foot rest frame was perfectly correct.

If, as these proceedings seem to show, and as the state of the art seems to show, the only novelty in this invention was the extending of the length of the foot rest so as to cover· completely (what had theretofore been done only in part) the frame of the foot rest and the slot in the front of the chair, we should be of opinion that there was no invention apparent and that the issue of the patent was unauthorized. If it would be desirable to entirely conceal the frame and slot, in order to make the chair more neat and artistic, the commonest mechanic, having the former structures before him, .would .see that

a very feasible way would be to lengthen the foot rest. It was a mere question of extent or degree, of an increase of the size of an existing device to more completely fulfill its purpose. The case falls within the rule of which there are numerous illustrations in the reports of the Supreme Court and of this court. Some of these are Smith v. Nichols, 21 Wall. 112, 22 L. Ed. 566; Burt v. Evory, 133 U. S. 349, 10 Sup. Ct. 394, 33 L. Ed. 647; Grant v. Walter, 148 U. S. 547, 13 Sup. Ct. 699, 37 L. Ed. 552; Market Street Railway Co. v. Rowley, 155 U. S. 621, 15 Sup. Ct. 224, 39 L. Ed. 284; Fox v. Perkins, 52 Fed. 205, 3 C. C. A. 32; Galvin v. City of Grand Rapids, 115 Fed. 511, 53 C. C. A. 165; Eames v. Worcester Polytechnic Institute, 123 Fed. 67, 60 C. C. A. 37.

A patent to Brennan, No. 128,459, dated July 2, 1872, shows a foot rest pivoted to the front of its frame which turned up and rested against the front of the chair when the foot rest was pushed back. A patent to Lambert, No. 155,524, dated September 29, 1874, shows a foot rest, to the front of which is secured a strip wider than the thickness of the frame, obviously intended to overspread the slot in the front of the chair when the foot rest was pushed back. And Petry's foot rest above referred to, when pushed back covered the slot within the sides of the frame, but did not cover the ends of the sides of the frame. A still earlier patent to Bauder in 1842 shows in the drawing a foot rest running out of the front of the chair, on the front of which is secured a strip which when the rest is pushed back covers the opening in the chair, though this feature is not mentioned in the specifications or claims.

But, although there was nothing in the earlier patents which precisely met Streit's patent in the respect of affording a cover for the frame of the foot rest and the opening in the front of the chair, it is shown that his device had been known and in public use more than two years before his application was filed. Frank B. Wersel, Jr., of Cincinnati, as early as July, 1897, made and sold at that place one or more chairs which had a foot rest sliding upon ways under the chair when closed. The foot rest frame extended quite to the sides of the chair frame, and covered the vacant space under the front end of the chair frame, so that when the seat was pushed in, the frame of the foot rest became in appearance a part of the front of the chair. Wersel testified in the case and produced one of the chairs, his sale book kept at that time, showing the sale of such a chair, and a catalogue used and circulated in his business, containing a picture of the chair. The foot rest was hinged to the front of its frame, but when not in use, it was turned down inside the frame, and passed under the chair with the frame; the upper edge of the latter meeting the upholstering of the seat of the chair above it. The only difference between that and Streit's was that in the Wersel chair the front of the frame filled the blank space in front of the chair, while in Streit's the seat itself performed that service. This chair and another like it made and sold by another manufacturer about the same time, called the "Eureka" chair, of which an original sample was produced, are fully authenticated by the testimony, and formed the basis of the opinion of the court below, in which it was held that they embodied

the essence of the Streit invention. We agree with the court below in thinking that it did not require invention to turn the foot rest up for a front instead of using its frame for that purpose.

The judgment must be affirmed.