FOREST CITY FOUNDRY & MFG. CO. v. BARNARD.

(Circuit Court of Appeals, Sixth Circuit. February 8, 1910.)

No. 1,979.

1. PATENTS (§ 66*)—ANTICIPATION—UNCLAIMED FEATURE OF PATENTED DEVICE.
    A patentee is entitled to a beneficial use of a feature of his device if it actually exists, although he did not specifically claim it, and it may constitute an anticipation of a later patent.

    [Ed. Note.—For other cases, see Patents, Cent Dig. §§ 79-81; Dec. Dig. § 66.*]

2. PATENTS (§ 328*)—ANTICIPATION—FLUID DISTRIBUTOR.
    The Barnard patent, No. 580,151, for a fluid distributor, held not anticipated, and valid.

Appeal from the Circuit Court of the United States for the Northern District of Ohio.

In Equity. Suit by William N. Barnard against the Forest City Foundry & Manufacturing Company. Decree for complainant, and defendant appeals. Affirmed.

W. T. Arnos, for appellant.
W. T. Read, for appellee.

Before SEVERENS and WARRINGTON, Circuit Judges, and SANFORD, District Judge.

SEVERENS, Circuit Judge. The complaint made by the bill in this case is of the infringement of letters patent No. 580,151, granted to W. S. Barnard as assignor to William Nichols, April 6, 1897, for improvements in fluid distributors. The defense is that the patent is invalid because of anticipation by earlier patents; and by two, especially, one of which is a patent to Rhodes, No. 185,965, granted

---

January 2, 1877, and the other a patent to Forster, No. 220,277, granted October 7, 1879. The first of these last-mentioned patents was for improvements in water distributors, and the second, for improvements in lawn sprinklers. The court below held that the patent in suit was not anticipated, and that it was valid. This is the sole question controverted here.

Barnard's invention, as he says in his specification, contemplated two leading features; a chamber wherein the fluid is caused to receive a reverberatory and gyratory motion, and a discharge-opening through which the fluid is delivered from the chamber and immediately released without passing, as in other distributors, through an elongated passage or tube. For these purposes he devised a discoid form of chamber—that is to say, consisting of two circular plates parallel to each other and a few inches apart which were connected at their outer edges by a circular band or plate of the same diameter, the whole resembling a very short drum. Tangentially to this structure he attached at its periphery an inlet tube through which the incoming fluid would enter the chamber and striking against the inside of the wall of the chamber would be whirled around the inside of the wall until it made the circle, and impinging upon the stream still coming in would be diverted inwardly thereby and would proceed in another circle inside of the first and so on until the convolutions came to the center of the chamber where, through an opening in one of the circular plates or heads of the drum-shaped chamber, the fluid would be discharged and scattered by the force and direction already given to it over an area somewhat proportioned to the force and violence with which it was moving when discharged. No other "mouth piece" was contemplated. The theory is that the fluid is converted into spray by its impinging upon the inner wall of the chamber, and by its impinging one part upon another by its convolutions, and also by its being impeded where its course is changed to leave the chamber. A witness likened the operation of the fluid to that of a "whirlpool."

Fig. 3 of the drawings shows a cross-section of the chamber, the adit pipe and the discharge-opening, B. The outer rim is the circular wall of the chamber. The claims are these:

**Fig. 3.**

"(1) In a nozzle for spraying liquids a chamber substantially circular in one plane of section provided with an outlet-port and with an inlet-passage, the axis of which lies in the plane of a circular section and between a diameter and a tangent of such section; whereby a rotary motion is imparted to the liquid in the chamber by the force of the inflow which motion is retained after it escapes from the chamber, substantially as described.

"(2) In a nozzle for spraying liquids a chamber of substantially circular form in cross-section, provided with a tangential inlet-port, the axis of which lies in the plane of the circular section, and with an outlet-port delivering in a direction transverse to the axis of the inlet-port.

"(3) A spraying-nozzle comprising a chamber of approximately circular form in cross-section, provided at its periphery

with a tangential inlet-port, and at its center with an outlet-port, the axis of which is transverse to that of the inlet-port.

"(4) A spraying-nozzle comprising a chamber having two approximately circular side walls, and an approximately circular peripheral connecting portion, said chamber provided with an inlet-port adapted to deliver the incoming fluid against the connecting portion, and one of the said side walls being provided with an opening for the discharge of the fluid."

No question is made of the efficiency and utility of this device; and it seems to us, in view of the object sought to be attained, to exhibit a good deal of ingenuity in contriving the means for the method. But it is contended by the defendant, the appellant here, that similar devices to accomplish the same purposes had been invented and patented by Rhodes in 1877 and Forster in 1879. Of these, the Forster patent is the one most worthy of consideration as an anticipation, and we shall therefore dismiss the other remarking only that we find nothing in it which contains a suggestion of Barnard's invention.

Forster's was a device for a lawn sprinkler. Fig. 2 of the drawings with a brief explanation will suffice for an understanding of it.

*Fig. 2.*

A is an up-standing water pipe, c is a plug having several spiral grooves, f, in its periphery, C is the sprinkler-nozzle composed of a tubular body, c, and a flaring mouthpiece, d. The plug, e, is driven tight into the lower end of the tubular body, c, and the function of the spiral grooves upon its edge is to provide water passages which impart a spiral movement to the water as it passes through the nozzle, and, in connection with the flaring open mouthpiece, break up the stream of water into a fine spray. We have followed the inventor's language closely. The points of resemblance to Barnard's device are very scanty. Counsel for the appellant claim that the spiral grooves perform the same function as the inside of the circular sides of Barnard's chamber does. It is possible that in Forster's device the water, to some extent, impinges upon the inside of the "tubular body" though he does not suggest it. But he would be entitled to the benefit of that feature, if in fact it existed. Goshen Sweeper Co. v. Bissell Carpet Sweeper Co., 72 Fed. 67, 19 C. C. A. 13; Goodyear Rubber Tire Co. v. Rubber Tire Wheel Co., 116 Fed. 363, 53 C. C. A. 583; Stilwell-Bierce, etc., Co. v. Eufaula Cotton Oil Co., 117 Fed. 410, 415, 54 C. C. A. 584; Eames v. Worcester Polytechnic Institute, 123 Fed. 67, 71, 60 C. C. A. 37. But he seems to construct his device in such form that the spiral streams of water shall converge at the nozzle and be there broken into spray. Assuming that some slight disintegration is effected by directing the water upon the sides of the tubular body, this would be only one of the several united means of effecting the desired object employed by Barnard; and taken as a whole his method is a very different way of breaking up the water from that of driving it through the reverberatory chamber of Barnard's patent. There is not in Forster's invention the provision of means at all adapted to effect such a violent tumult of the fluid as

is created by the means contrived by Barnard. Again in the Barnard patent there is no nozzle which co-operates with antecedent means in reducing the water to spray. That has been done in the chamber, and the orifice is a mere exit for the spray.

We think there is no fair ground for regarding any previous invention to which our attention has been called as an anticipation of the patent in suit. This result accords with that of the Circuit Court, and its decree should be affirmed, with costs.

LURTON, Circuit Judge, participated in the hearing and decision of this case, but is no longer a member of this court.